In the Matter of the General Assignment for the Benefit of Creditors of Howard J. Geoghan et al., Copartners Doing Business as R & H Electric Company, Assignors, to New York Credit Men's Adjustment Bureau, Inc., Assignee.

Supreme Court, Special Term, Bronx County, September 6, 1951.

*Harold J. Keefe* for National City Bank of New York.

*Levin & Weintraub* for assignee.

MATTHEW M. LEVY, J. In the early part of 1951, R & H Electric Company, a retail dealer in electrical and gas ranges, refrigerators, etc., received certain merchandise from several sellers. Some payment was made on account, but the substantially greater part of the purchase price was unpaid. The credit transactions involved arrangements with the National City Bank of New York, whereby the merchandise was acknowledged to be held in trust by the dealer for the bank. Formal trust receipts were executed, which, in substance, provided that the bank (called the " entruster ") entrusted the merchandise to the buyer (called the " trustee ") for the purpose of selling each item at not less than the unpaid balance of net invoice price from the seller to the dealer. The dealer further agreed that it would hold the goods together with proceeds in trust for the bank and to keep the trust property separate and identifiable as the property of the bank. The trustee agreed, further, " to surrender same and account therefor to the entruster forthwith upon demand ", and that " a security interest in the said goods, together with the proceeds and avails thereof as and when received by the undersigned (trustee), remains in or will remain " in or has passed to or will pass to the entruster ", who " may at any time terminate this trust, either with or without notice to the undersigned, and may enter into any place where any such trust property is kept or stored and take possession thereof ". The trust receipts also provide that " The rights of the entruster as specified herein, * * * shall include any and all rights to which the entruster is or may be entitled to under the provisions of the Uniform Trust Receipts Law of the State of New York ".

In July, 1951, the dealer duly made an assignment to the New York Credit Men's Adjustment Bureau, Inc., for the benefit of creditors. Claiming that some or all of the trust chattels will on a sale realize a net amount in excess of the lien of the bank, the assignee has moved this court for authorization to the assignee to sell the chattels. The assignee desires to sell the chattels free and clear of the lien of the bank at an upset price

in the amount of the lien, and agrees that if the chattels do not realize the amount of the lien for each chattel sold, that chattel will be returned to the bank. The assignee claims that only by this procedure is it possible to preserve the dealer's equity for the benefit of its creditors. This is disputed by the bank, which has made demand upon the assignee for the delivery to the bank of the merchandise sought to be sold. The bank opposes the assignee's application for leave to sell the goods in question, and states that it will conduct the sale in due course, and any net excess over its lien will of course inure to the benefit of the dealer's assignee.

No precedents have been submitted to me, and I am told that the case is one of first impression. Nevertheless the issue seems to me not to be difficult of solution, under accepted principles and the applicable statutes.

Except as otherwise specifically provided by statute (e.g., Debtor and Creditor Law, § 4, subd. 5, last par.; § 13, cl. d; § 15, subds. 6, 6-a), it is axiomatic that an assignee for the benefit of creditors steps into the shoes of his assignor — and he must walk juridically with those shoes however comfortable or cramped they may be. The assignee has no title — since the dealer did not; and the assignee has no right to possession as against the bank — since the dealer did not. Without title and without possession, what can the assignee sell? On the other hand, the bank as the entruster has both a security interest and a possessory right. Subdivision 2 of section 56 of the Personal Property Law (Uniform Trust Receipts Law) provides that " An entruster entitled to possession under the terms of the trust receipt   *   *   *   may take such possession without legal process ". The trust receipts in this case contractually provided for such right in the bank.

The assignee invokes sections 34 and 35 of the Debtor and Creditor Law. These sections do not give any comfort to the assignee as against the entruster. They set forth the method afforded a " secured creditor " in determining the value of the assets constituting the security. Subdivision (d) of section 30 of the Debtor and Creditor Law defines a " secured creditor " as " a creditor who has either legal or equitable security for his debt   *   *   *, or a creditor to whom is owed a debt for which such security is possessed by some endorser, surety, or other person secondarily liable." Obviously the assignee is not a secured creditor, as the dealer was not. If anything, the " secured creditor " in this case is the bank, the " entruster " who has a " security interest ".

Subdivision 14 of section 51 of the Personal Property Law (Uniform Trust Receipts Law) defines a " trustee " as " the person having or taking possession of goods, * * * under a trust receipt transaction, and any successor in interest of such person." The dealer here is the trustee, and the assignee his successor. Paragraph (b) of subdivision 3 of section 56 of the Personal Property Law provides that the entruster may, upon appropriate notice, sell the chattels " for the trustee's account " at a public or private sale, and sets forth the manner in which the proceeds of sale are to be applied. The dealer-trustee (here the assignee) is amply protected, for a sale for the trustee's account would in effect be a sale for the account of the assignee, who succeeded to the rights of the trustee.

The naked issue in this case resolves itself around the question as to whether the sale of these goods should be conducted by the assignee (who agrees to protect the bank's primary interests) or whether the sale should be held under the auspices of the bank (who is required to protect the assignee's secondary interests). I hold that, under the existing arrangements in this case, it is the right of the bank to sell, and not that of the assignee — and accordingly the motion must be denied.