Bernard S. Meyer, J.
Plaintiff as assignee for the benefit of creditors of Elwood Auto Parts, Inc. sues, by leave of court, for the conversion by defendant bank of assets of the assignor. The complaint sets forth three causes of action: the first is for the conversion; the second, for punitive damages; and the third, for violation of section 1433 of the Penal Law. Plaintiff moves for summary judgment and for the purposes of this motion concedes the validity of the security agreement held by the bank. That agreement gave the bank the right in the event of default “ (a) to declare the Note and all Obligations due and payable * * * without notice or demand; (b) to enter the * * * premises * * * where any of the Collateral may be located and take and carry away the same * * * with or without legal process ”. The undisputed facts are that the assignor was in default under the security agreement on May 9, 1966, that the assignment was made on May 26, 1966 and filed on May 27, 1966 and an order made on May 31, 1966 by the Supreme Court, Suffolk County, authorizing the assignee, upon filing bond and after notice to creditors, to sell the assignor’s physical assets, that on June 2, 1966 an auctioneer employed by the assignee visited the bank and informed the bank’s senior vice-president and comptroller that the assignment had been made, that up to that point the bank had taken no steps to seize the collateral other than attempting to contact the borrower, that on June 2, 1966 the key to the premises leased by the assignor was in the assignee’s possession and on the afternoon of that day was used by one of the auctioneer’s employees to let the bank’s senior vice-president into the premises so that he could view the assets in question, that on June 3, 1966 the bank’s *279 employees entered the premises of the assignor at the direction of the senior vice-president and removed the assets in question, that admittance of the bank’s employees to the premises was obtained by means of a key which was not received from anyone of the assignor’s firm, the assignee, auctioneer or landlord, but was obtained from a representative of a locksmith, and that the assets seized by the bank were thereafter sold by the bank.
Since plaintiff has presented no evidence of ‘ ‘ actual physical damage ” to the assets, section 1433 of the Penal Law does not apply (Polychrome Corp. v. Lithotech Corp., 4 A D 2d 968, 969). In the exercise of the discretion granted by CPLB 3212 (subd. [b]), defendant is, therefore, granted summary judgment dismissing the third cause of action. On the first and second causes of action, plaintiff’s motion for summary judgment is denied for the reasons hereafter set forth, but since plaintiff’s concession as to the validity of the security agreement was for the purposes of its own motion only, and there is, in view of the blanks in the security agreement, a triable issue concerning its validity, defendant’s request for summary judgment on these causes of action is also denied.
The contention that, assuming the validity of the security agreement, the action of the bank’s employees nevertheless constituted a conversion is predicated on the propositions that (1) the assets were in custodia legis and (2) the unauthorized entry by the bank’s employees constituted a breach of the peace. Neither contention withstands analysis.
While it is true that section 14 of the Debtor and Creditor Law makes it ‘ ‘ the duty of the assignee to collect and reduce to money the property of the estate ”, and that such property is in custodia legis (Matter of Creveling & Son Corp., 259 App. Div. 351, affd. 283 N. Y. 760; M. Mirzoeff, Inc. v. Foster & Chadwick Fur Co., 36 Misc 2d 860; Florence Trading Corp. v. Rosenberg, 128 F. 2d 557; see Matter of Sheldon, 173 N. Y. 287), it is also true that assets constituting security are not part of “ the property of the estate ’ ’ unless and until the court, upon petition by either the secured creditor or the assignee brought pursuant to section 35 of the Debtor and Creditor Law, determines that valuation by creditor’s sale “ is impracticable or would cause undue delay” and orders sale of the assets by the assignee (Matter of Oakdale Woods [Goldweber], 24 Misc 2d 141; see Matter of Geoghan [N. Y. Credit Men’s Adj. Bur.], 200 Misc. 945; Matter of Thelmco, 177 Misc. 484; 21 Carmody-Wait, New York Practice, p. 638). This is because, though section 20 of the Debtor and Creditor Law gives the court “ full jurisdiction to do all and every act relating to the assigned estate, the assignees, *280 assignors and creditors ”, it is clear from sections 15 (subd. 8), 30, 34 and 35 that, until a section 35 order is made, secured property is not part of the assigned estate. Thus, subdivision 8 of section 15 authorizes the court “ To allow secured creditors such sum only as to the court seems to be owing over and above the value of their securities”, 'section 34 directs that “ The value of assets constituting the security may be determined by one of the following methods by the secured creditor: * * * (2) By creditor’s sale. When the asset constituting the security is something other than an obligation for the payment of money, the secured creditor may determine its value by creditor’s sale.”, subdivision (e) of section 30 defines “ 'Creditor’s sale” to include “ any sale effected by the secured creditor by judicial process or otherwise under the terms of his contract or the applicable law for the purpose of realising upon his security ”, and subdivision (3) of section 35 authorizes the court to order a liquidator’s sale only “ upon petition by either the secured creditor or the liquidator ’ ’ and ‘ ‘ Where valuation under the provisions of section thirty-four is impracticable or would cause undue delay” (emphasis supplied). The statutory scheme contemplates sale by the creditor rather than the assignee. Until a subdivision (3) of section 35 order has been made, assets constituting security are not part of the assigned estate, and the assignee cannot ‘ ‘ pass to the purchaser good title, free and clear of all liens of the secured creditor ”. No such order was obtained here; the assignee, therefore, had no more right to possession of the assets in question than did his assignor, and since the underlying debt was in default at the time the assignment was made the assignor had, under the security agreement, no right as against the bank except to receive any surplus there might be after “ creditor’s sale ” (see Matter of Office Design v. Halpert, 36 Misc 2d 1081; City of New York v. United States, 283 F. 2d 829). While at first blush the result thus reached may appear inconsistent with Florence Trading Corp. v. Rosenberg (128 F. 2d 557, supra) and Matter of Yale Express System (250 F. Supp. 249), both are distinguishable; the Rosenberg case because at the time of the events with which it was concerned the uniform act which became article 2-A of the Debtor and Creditor Law was not part of the statute law of New York; the Yale Express case, because it concerns the Federal Bankruptcy Act and a chattel mortgage that matured after the trustee’s rights in a chapter X proceeding had vested.
But, argues the assignee, under the default provisions of the security agreement, rights and remedies are given to the bank only “ to the extent permitted by applicable law ” and section *281 9-503 of the Uniform'Commercial Code provides that “ In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace ”. The unauthorized entry by the bank’s employees, it is said, was a breach of the peace and their taking of possession, therefore, a conversion. Since the bank was, in light of the assignor’s default entitled to possession, if possession were properly obtained, the compensatory damages to which the assignee would be entitled on this theory could only be nominal. However, there need be no relationship between compensatory and punitive damages (Toomey v. Farley, 2 N Y 2d 71) and punitive damages may be granted even though compensatory damages be denied (Clark v. Variety, Inc., 189 App. Div. 462). The theory must, therefore, be analyzed.
The short answer to it is that there was no breach of the peace. The uniform code ‘1 makes no attempt to articulate the standards for determining whether the repossession can be accomplished without breach of the peace ” (Hogan, The Secured Party and Default Proceedings Under the UCC, 47 Minn. L.Rev. 205, 211). The phrase was, however, part of the Uniform Conditional Sales Act (and other uniform laws) in similar context, and was construed according to the common law (People v. Halliday, 237 App. Div. 302). The classic definition of breach of the peace is “ a disturbance of public order by an act of violence, or by an act likely to produce violence, or which, by causing consternation and alarm, disturbs the peace and quiet of the community” (People v. Halliday, p. 303; People v. Chesnick, 302 N. Y. 58, 60; People v. Most, 171 N. Y. 423, 429). Thus, when in the course of repossession, the conditional vendee received a black eye, it was a question for the jury whether a breach of the peace had occurred (People v. Halliday, supra) and when padlocks on a building are broken there is such force and violence as to constitute a violation of section 2034 of the Penal Law (Halberstadt v. Nelson, 34 Misc 2d 472) and, presumably, a breach of the peace. Here, however, the bank’s employees entered by use of a key, unauthorizedly obtained. Such an entry, the assignor’s consent aside, would constitute a breaking, but it is at least questionable whether in view of the consent to entry set forth in the security agreement (and to which the assignee took subject) the acts of the bank’s employees could be held to be a breaking (see People v. Kelley, 253 App. Div. 430, and Allen v. Crofoot, 5 Wend. 506). But, breaking or not, there was nothing in what they did that disturbed public order by any act of violence, caused consternation or alarm, or disturbed the peace and quiet of the community. Nor was the use *282 of a key to open the door an act likely to produce violence; indeed, it produced from the landlord only (1) a call for the police and (2) a request to the bank employees that they leave the key when they were through. Under the circumstances that existed during the times the bank’s employees entered the premises, there was as a matter of law no breach of the peace, Wood v. Phillips, 43 N. Y. 152,156. In reaching that conclusion, the court has overlooked neither the tenet of construction to achieve uniformity (Uniform Commercial Law, § 1-102, subd. 2, par. [c]) nor Girard v. Anderson (219 Iowa 142), Evers-Jordan Furniture Co. v. Hartzog (237 Ala. 407), Hawkins Furniture Co. v. Morris (143 Ky. 738), Hileman v. Harter Bank & Trust Co. (174 Ohio St. 95), and Sturman v. Potito (161 Misc. 536), cited by plaintiff. The statement in Sturman which plaintiff quotes was dictum and is inconsistent with the decisions in People v. Halliday (237 App. Div. 302) and Mendelson v. Irving (155 App. Div. 114). Except for the Girard case, the other cases are distinguishable on their facts, and while the Girard case is contrary to the decision now being reached, the instant decision is supported by Malone v. Darr (178 Okla. 443), holding as a matter of law that no breach of the peace was committed when an automobile dealer repossessed a car by taking the keys out of i,t. It follows that plaintiff cannot recover on the breach of the peace theory.
This is not to say that the bank’s act in proceeding by way of self-help is condoned by the court. Since it had knowledge of the assignment proceeding and the order of sale, the bank should have made application to the court for a modification of the order excluding from it the assets which constituted the bank’s security. Whether its conduct constituted a contempt is not now before the court. All that is presently decided is that, if the security agreement is valid, the bank’s conduct did not constitute a conversion (cf. Allen v. Crofoot, supra).
There remains for consideration defendant’s argument that the second cause of action for punitive damages does not sufficiently plead malice. Since the validity of the security agreement is yet to be determined, the sufficiency of the cause of action must be passed upon. Paragraph 11 Forty-seventh ” of the complaint 'alleges that the bank’s conduct w<as ‘1 willful, malicious and unconscionable. ’ ’ Punitive damages may be awarded where the wrong complained of is “ morally culpable ” (Walker v. Sheldon, 10 N Y 2d 401, 404) or “ gross and wanton ” (James v. Powell, 19 N Y 2d 249, 260), as well as when it is activated by evil motives. The allegation of unconscionable conduct is, therefore, sufficient to authorize an award of punitive damages and to sustain the second cause of action.