**SAVARIN CORPORATION, Plaintiff-Appellee,**

v.

**NATIONAL BANK OF PAKISTAN, Defendant-Appellant,**

and

**S. H. A. Sharbatly, Defendant.**

**No. 289, Docket 34533.**

United States Court of Appeals, Second Circuit.

Argued Dec. 16, 1970.

Decided Aug. 27, 1971.

John W. Barnum, New York City, (Cravath, Swaine & Moore, Philip P. Berelson, New York City, of counsel), for defendant-appellant National Bank of Pakistan.

Charles L. Trowbridge, New York City, (Gifford, Woody, Carter & Hays, Norman M. Carter, Jr., New York City, of counsel), for plaintiff-appellee.

Before MOORE, KAUFMAN and HAYS, Circuit Judges.

MOORE, Circuit Judge:

Defendant National Bank of Pakistan (the Bank) appeals (1) from a judgment in favor of plaintiff Savarin Corporation (Savarin) awarding Savarin $60,500 compensatory damages and $60,000 exemplary damages after a jury trial upon issues raised by the amended complaint and (2) from the denial of its pre-trial motion for summary judgment, 290 F.Supp. 285. A further oral amendment changing the "tortious inducement" charge in the amended pleadings to a "tortious interference with contract" charge made for the first time at the end of plaintiff's case and allowed by the Trial Court is claimed to have been highly prejudicial to the Bank and, hence, reversible error.

A comprehensive pre-trial order containing the essential facts and issues was entered in which "The parties agreed that the trial of this action should be based upon this order and upon the pleadings as amended" except for any relief against the defendant S. H. A. Sharbatly over whom no personal jurisdiction had been obtained.

The basis of the suit is best disclosed in the amended complaint. In summary it alleges that Savarin, with its place of business in New York City, was in the business of exporting grain and Sharbatly was an importer of grain in Saudi Arabia. On September 20, 1966, Savarin agreed to sell Sharbatly 6,000 tons of wheat, 3,000 to be shipped to Dammam and 3,000 tons to Jeddah. Letters of credit in Savarin's favor were to be issued by the Bank. The letters of credit are set forth in part in the amended complaint and were exhibits in the trial.

In the first cause of action, Savarin alleged that the Bank repudiated its obligations under the letters of credit and that this act constituted "anticipatory repudiation" which resulted in damages to Savarin of $58,584.46.

In a second cause of action Savarin claimed that the Bank inserted terms in the first two letters of credit which Savarin could not meet and that the Bank's announced refusal to accept proposed shipping documents from Savarin constituted an anticipatory breach.

The third cause of action was for breach of contract against Sharbatly and has been abandoned.

The fourth cause of action (referred to frequently during the trial as the "Third" against the Bank) alleged that the Bank to curry favor with Sharbatly, a valued customer, "wilfully, wantonly and maliciously, with intent to injure and inflict losses upon plaintiff, [did] induce, encourage and persuade S. H. A. Sharbatly * * * [to breach his agreement]" and did conspire with Sharbatly to destroy his obligations to Savarin. Exemplary damages of $250,-000 were sought.

The issues as formulated in the pretrial order, in substance centered around the construction given by the Bank to the terms of the letters of credit and whether this construction constituted a modification thereof, thus resulting in a breach of the Bank's obligation to Savarin thereunder. As to the "exemplary damage" cause of action, the issue was framed in terms of malicious inducement by the Bank of the breach of Sharbatly of his Savarin contract.

Despite a voluminous record containing the testimony of many witnesses and scores of exhibits, the letters of credit themselves are basic to a proper resolution of this controversy and lend themselves to judicial interpretation as a matter of law. Rather complete documentation of the events, primarily of October 1966 discloses a factual situation virtually undisputed.

Fundamental as a matter of law is the principle that the obligations of the Bank to Savarin are to be found in, and determined by, the letters of credit. These letters evidence the sole contracts between the parties. Any breach by Sharbatly of his Savarin contract is not germane to the issues to be resolved here as to the letters of credit, although Judge Motley properly instructed that the fact that the Bank had notice of the existence and terms of the Sharbatly-Savarin contract was relevant to determining the intent of the parties with respect to the Bank-Savarin letters of credit.

*The Letters of Credit*

The principal controversy is over the question: what document or documents constitute the respective letters of credit?

Under date of September 26, 1966, the Bank (NY) * sent to Savarin a document which stated in pertinent part:

"Please be guided by the clauses indicated by 'X':

"[printed] We are in receipt of a cable/wire from our correspondent indicated above which reads as follows:

"[typewritten] WE ESTABLISHED CONFIRMED IRREVOCABLE CREDIT THREESIXNINESEVEN [sic] SHA VSHARBATLY JEDDAH SAVARIN CORPORATION ELEVEN BROADWAY NEW YORK FOUR NY AMOUNT ABOUT USDOLLARS ONEFIVE FOURFOUR TWOFIVE SHIPMENT ABOUT ONE FIVE-ZEROZERO METRIC TON HARD-WINTER NUMBER ONE GOLD GRADE WHEAT NEWCROP DARK-RED BIG GRAIN PRICE USDOL-LARS ONEZEROTWO [sic] CENTS NINETYFIVE PER MTON C AND F DAMMAM USA PORT

---

* The parenthetical insertions indicate the New York, Jeddah or Dammam branches of the Bank.

DAMMAM VALIDITY THIRTIETH NOVEMBER FIFTEENTH DECEMBER SIXTYSIX DETAILS AIRMAILING"

"All presentations under this credit must be made to us within its validity. The letter of credit and one additional copy of your invoice must accompany the documents upon presentation.

"Please note that the above is given to you in accordance with instructions of the above mentioned correspondent and conveys no engagement by us.

"This credit is subject to the Uniform Customs and Practice for Documentary Credits (1962 Revision). International Chamber of Commerce Brochure No. 222." (Exh. A.)

The "correspondent's L/C No." was 3697 and the amount was $154,425.00. Of some significance are the paragraphs not marked with an "X" which read:

"At the request of our correspondent indicated above, we are enclosing their letter of credit established in your favor.

"At the request of our correspondent indicated above, we are enclosing their letter of credit established in your favor as permanent part of this advice.

"This is a mail confirmation of the credit opened by cable through us. It is only available for such amount as has not already been availed of under such cable advice and may not be availed of at all unless attached to and as part of our notification dated . . . . . . of such cable, the two jointly constituting the outstanding amount of this credit."

A second document similar in form covered the other 1,500 tons of wheat for Dammam (Exh. B).

The 3,000 tons for Jeddah were made the subject of advices dated October 13, 1966, for 1,500 tons each. The numbers were 3713 and 3717 and the amounts $149 and $925, respectively. The sentence "This is subject to mail confirmation." was included in each advice. The typed portion of the forms read as follows:

"WE ESTABLISH CONFIRMED IRREVOCABLE CREDIT THREESEVENONETHREE SHA SHARBATLY JEDDAH SAVARIN CORPORATION ELEVEN BROADWAY NEW YORK FOUR NY AMOUNT ABOUT USDOLLARS ONEFOURNINENINETWOFIVE SHIPMENT ABOUT ONEFIVEZEROZERO METRIC TONS AMERICAN HARD WINTER NUMBER ONE OLD GRADE WHEAT NEWCROP DARKRED BIGGRAIN PAKEDIN NEWDOUBLE JUTEBAGS WITH BLUELABEL ATTACHED ON EACHBAG WEIGHING ONETWOZERO LBS GROSS FOR NET PRICE USDOLLARS NINETYNINE CENTS NINETYFIVE PER METRICTON CANDF JEDDAH LINERTERMS SHIPMENT SHOULD BE IN THREE LOTS EACH LOT NOT EXCEEDING FIVE HUNDRED TONS TEN PERCENT MORE OR LESS USAPORT JEDDAH SHIPMENT SHOULD BE EFFECTED BY FIRSTCLASS STEAMER WHICH SHOULD NOTBE OVERTHAN TWENTY YEARSOLD TRANSSHIPMENT NOTALLOWED PARTSHIPMENT ALLOWED SHIPMENT THIRTIETH NOVEMBER NEGOTIATION FIFTEEN DECEMBER SIXTYSIX SHIPPING DOCUMENTS TOBE IN TWO GROUPS EACH GROUP ABOUT TWOFIVEZERO TONS TEN PERCENT MORE OR LESS DETAILS AIRMAILING"

Under date of October 17, 1966, the Bank (NY) sent the forms previously used, except with these notices were enclosed formal letters of credit entitled "Confirmed Irrevocable Credit" which confirmed the cable advices dated September 25, 1966. These notices which related to Nos. 3697 and 3698 stated in part "we are enclosing their [Bank (Jeddah)] letter of credit established in your favor" and "This is a mail confirmation of the credit opened by cable

through us" (Exhs. E, F, G and H). The letters of credit (Exhs. F and H) contain the clause "shipment should be in three lots each lot not exceeding 500 tons 10% more or less."

Similar notices and formal letters of credit covering Nos. 3713, and 3717 were sent to Savarin by the Bank (NY) under date of October 25, 1966, the cable date being October 10, 1966 (Exhs. I, J, K and L).

The parties have devoted a substantial portion of their arguments to the question: what constitutes the letters of credit? Savarin contends that the initial cables were the confirmed irrevocable credits. The Bank in turn argues that the cables were not complete and that the words "details airmailing" as to all letters and "Subject to mail confirmation" as to Nos. 3713 and 3717 indicate that more complete information was to follow. It is unnecessary, however, to resolve this question because it is clear from the documents in the record that letter of credit obligations were established therein by the Bank in favor of Savarin. The ultimate question is: did the Bank fail to perform its obligations thereunder?

After receiving the letters of credit (Nos. 3697 and 3698), Savarin wrote to the Bank (NY) on October 21, 1966, advising that with respect to the clause "Shipment should be in 3 lots each lot not exceeding 500 tons 10% more or less.", "we [Savarin] intend to ship *on one vessel* these six lots of wheat to Dammam, * * *." Savarin therein asked the Bank (NY) to confirm the fact that twelve sets of documents covering one shipment "will be acceptable to you," acceptance to be shown by endorsement of "ACCEPTED" on a copy. Savarin added "If not acceptable, kindly state reason in writing and forward same to us by close of business on October 21, 1966" (Exh. M).

Prior to October 21st, the controversy as to whether shipment by one steamer or by separate steamers was required was evidenced by conversations between Savarin and the Bank (NY), cables from the Bank (NY) to the Bank (Saudi Arabia), letters and cables from Savarin to the Bank and Sharbatly. At first the Bank (NY) construed the letters to require separate steamers. Savarin requested Sharbatly to clarify the situation by amending, Sharbatly refused and finally the Bank (NY) by cable, October 28, 1966, advised the Bank (Jeddah) that "documents if presented in this form [shipment 'on one ship'] will be negotiated by us as these would be in terms of credit which does not specify that shipment should be by different steamers."

By letter of October 31, 1966 (Exh. N), the Bank (NY) informed Savarin that a cable, quoted in the letter, from its Jeddah office advised it in substance that the credits would be honored only if the shipments were by separate steamers. Under these circumstances which amounted to an anticipatory breach by the Bank, Savarin was forced to liquidate its wheat commitments, thereby suffering damages because of the lower wheat prices then prevailing, expenses incurred and lost profits. These damages, despite the amount claimed in the amended complaint of $58,584.46, the jury assessed at $60,500.

■■ Quite apart from the Bank's (NY) interpretation of the letters of credit as not requiring separate steamers, there was ample justification for the jury to conclude that no such requirement or restriction was contained therein. Therefore, the Bank's declared refusal to accept documents for shipment on one steamer was clearly an anticipatory breach of contract for which it should respond in damages. Nor did the Bank show that it altered its position to its detriment in reliance on any "assertion" by Savarin inferable from its initial request that the letters of credit be amended to permit 3,000-ton shipments. Thus, Savarin is not, as the Bank now asserts, "estopped" to rely on the Bank's insistence on 500-ton shipments as an anticipatory breach. The judgment for

breach of the contracts as evidenced by the letters of credit is affirmed.

### Exemplary Damages

The Fourth Cause of Action in the original complaint as Judge Herlands pointed out in his decision on the summary judgment motion, was "imprecise, unclear and ambiguous" but he granted leave to amend, suggesting a tortious inducement of breach of contract theory. Savarin in its amended complaint adopted this theory. The pre-trial order also adopted the theory that the Bank's acts constituted a tortious inducement by the Bank of breach of the Savarin-Sharbatly wheat contract (Pre-Trial Order, (3) (b) (4)).

■■ The granted amendment substituting "tortious interference" instead of "tortious inducement" was more than a change of theory; it required quite different proof to meet it. Thus, the amendment and the denial of an opportunity to refute the allegations were highly prejudicial to the Bank and resulted in a denial of a fair trial on that issue. However, in examining the entire record, it is devoid of any proof which sustains a charge of "inducement" or "interference." Concededly, as a matter of law, the Bank's obligations were created by the letters of credit. What the Bank did to inform itself (such as seeking instructions from Sharbatly) before deciding not to honor the letters was not interference with the Savarin-Sharbatly contract. Sharbatly by his actions may have induced the Bank to breach its contracts with Savarin (the letters of credit) but Sharbatly's breach of his Savarin contract (as alleged in the original Third Cause of Action against Sharbatly) is not involved in the case for want of jurisdiction. Sharbatly's actions cannot be made the responsibility of the Bank. Savarin conjures up by suspicion and speculation the thought that the Bank in Saudi Arabia might have conspired with Sharbatly to change the terms of the letters of credit so that Sharbatly would have some justifiable excuse for not performing his wheat contract. There is no proof whatsoever upon which any such inference could stand. In fact, Savarin's concession that it had not "established the existence of a conspiracy, by inference or otherwise, between Sharbatly and the Bank," is a refutation of this charge. In other words, Sharbatly may have been the cause of the Bank's failure to honor the letters of credit but this is not tortious interference by the Bank with respect to the Savarin-Sharbatly contract.

Thus, all that appears in the record is that after the one or separate steamer controversy was initiated, the Bank sought the views of the opener of the credit—a seemingly normal business procedure. Any delay in mailing confirmations—even assuming that the cables were the letters of credit (a very questionable assumption)—was not the cause of damage to Savarin. The damage was caused by the Bank's position on October 31st that it would not honor the credits and for this damage it has been adequately compensated by the judgment.

Therefore, quite apart from the prejudice to the Bank in the substantial change of theory from "inducement" to "interference" and from the lack of opportunity to meet this change by the refusal of an adjournment to obtain a necessary witness and supporting documents, the proof actually adduced by Savarin fails to support a verdict for exemplary damages based on wantonness or maliciousness of conduct on the part of the Bank. New York law, here applicable, indicates this requirement. *See* Walker v. Sheldon, 10 N.Y.2d 401, 223 N.Y.S.2d 488, 179 N.E.2d 497 (1961); Cherno v. Bank of Babylon, 54 Misc.2d 277, 282, 282 N.Y.S.2d 114 (Sup.Ct. Nassau Co. 1967), aff'd, 29 A.D.2d 767, 288 N.Y.S.2d 862 (2d Dep't 1968). The exemplary damages portion of the judgment, therefore, cannot stand.

The motion for summary judgment was properly denied.

Judgment affirmed as to $60,500 (compensatory damages) and reversed as to $60,000 (exemplary damages). Denial of the motion for summary judgment affirmed.