Philip I. MORGAN, Appellant,

v.

AMERICAN UNIVERSITY, Appellee.

No. 86–378.

District of Columbia Court of Appeals.

Argued Feb. 4, 1987.
Decided Nov. 30, 1987.

---

John M. Clifford, Washington, D.C., for appellant.

Benjamin P. Lamberton, with whom Anthony C. Morella, Washington, D.C., was on brief, for appellee.

Before BELSON, ROGERS and STEADMAN, Associate Judges.

STEADMAN, Associate Judge:

Philip Morgan is a former faculty member at American University ("AU") whose teaching contract was "rescinded." Morgan brought an action for damages; the jury verdict was in favor of AU. He appeals from denial of his pretrial summary judgment and post-trial motions for judgment notwithstanding the verdict. The principal issues on appeal are: 1) whether the denial of a summary judgment motion is appealable after a full trial on the merits; and 2) whether the interpretation of the contract was properly left to the jury. We hold against the appellant on both issues and therefore affirm.

## I. *The Facts*

In the spring of 1981, Morgan obtained a one-year appointment as a full-time, "tenure-track" faculty member at AU for the 1981–82 academic year. In the fall of 1981 and 1982 he applied for an additional year's appointment and was reappointed both times as he apparently had performed satisfactorily. For each reappointment he was required to detail his professional activities during the past year. Morgan's reappointment for the 1983–84 academic year was granted in April 1983. In July 1983, AU received an anonymous letter alleging that appellant was serving as a full-time professor at Golden Gate University (Norfolk/Richmond, Virginia) during the same times as his full-time appointments at AU. When confronted by AU with this accusation, Morgan conceded that he did hold a position at Golden Gate but contended that his duties there had not interfered with his AU responsibilities. AU reviewed Morgan's personnel files and found that none of the materials submitted by Morgan in support of the initial appointment or reappointments revealed his employment with Golden Gate. Contending that it never would have hired Morgan if he had disclosed his Golden Gate position, AU then "rescinded" Morgan's appointment for the 1983–84 year without affording Morgan any of the notice and hearing procedures specified in Section 19 of the Faculty Manual which was incorporated by reference into appellant's employment contract.[1]

---

**1.** Appellee never contended that the Faculty Manual was not incorporated into the contract.

In his suit, appellant contended that his dismissal was a breach of contract because the situation that caused his termination, nondisclosure of outside employment, was within those Faculty Manual provisions that require certain procedures before AU may "for cause" terminate tenure-track faculty members. These procedures include written notice of the charges, a hearing before an elected faculty committee, a clear and convincing burden of proof on AU, right of appeal to the University Trustees and one year's separation pay if termination is upheld unless there is a finding of moral turpitude. In response, AU argued that appellant was not terminated but rather the contract was rescinded on the grounds that Morgan made material misrepresentations to AU in obtaining his appointment, thus eliminating any rights under the contract and Faculty Manual. Both parties, asserting that the Faculty Manual language and relevant case law supported their position as a matter of law, moved for summary judgment. Both motions were denied by Judge Bacon, the motions judge, who ruled that there were issues of material fact to be resolved. The case then proceeded to trial.

At trial, Judge von Kann devised a special verdict form to accommodate the parties' vastly different conceptions of what issues were pertinent to the case. Following a five-day trial and three days of deliberations, the jury returned unanimous verdicts on all questions, finding in pertinent part that AU had established the essential prerequisites to rescission and that Section

19's procedures did not apply to situations involving the ending of a full-time faculty member's employment for failure to disclose a full-time position at another university.

Appellant then filed a post-trial motion for judgment notwithstanding the verdict. He conceded that AU had proven the elements of rescission but argued that, as a matter of law, AU had abrogated or limited its common law right to rescission in this case by including Section 19 in the employment contract. In a carefully reasoned order, Judge von Kann rejected this claim. On appeal, Morgan continues to contend that both Judge Bacon at summary judgment and Judge von Kann in his post-trial order should have found the contract language unambiguous and that pursuant to Section 19, AU could not rescind or otherwise terminate appellant's employment without establishing "cause" through the specified procedures.[2]

II. *Appealability of the Summary Judgment Denial*

■ We first discuss Morgan's contention that he was entitled to summary judgment before Judge Bacon. He argues that even assuming that Section 19 is ambiguous, he was entitled under Super.Ct.Civ.R. 12–I(k)[3] and his uncontested statement of material facts concerning the custom and practice of AU in faculty terminations to a finding that he had a right not to be terminated except upon the establishment of cause through Section 19 procedures, and hence to summary judgment.[4]

Its position at trial and on this appeal is that appellant's situation did not fall under Section 19 of the Manual; thus Morgan was not entitled to the notice and hearing procedures.

**2.** In his post-trial motion, Morgan also argued for a new trial, stating that even if the Section 19 issue was for the jury, the verdict on Special Verdict Question No. 8 was irrational and contrary to the great weight of the evidence. Question No. 8 stated:

Do you find that Section 19 of the American University Faculty Manual (Plaintiff's Exhibit 2) applied as of July, 1983 to situations in which American University sought to discontinue the employment of a full-time faculty member on the grounds that such member had failed to disclose to American University

that he or she was also a full-time faculty member at another University?

The jury's answer to this question was "no." On appeal, Morgan abandons this challenge to the jury verdict.

**3.** Super.Ct.Civ.R. 12–I(k) provides in pertinent part that

[i]n determining any motion for summary judgment, the Court may assure that the facts as claimed by the moving party are admitted to exist without controversy except as and to the extent that such facts are asserted to be actually in good faith controverted in a statement filed in opposition to the motion.

**4.** While appellee filed a memorandum in opposition to Morgan's summary judgment motion,

Appellee counters that Morgan, having suffered defeat at the hands of the jury, seeks to improperly turn back the clock and make this appeal depend on whether Judge Bacon properly denied his motion for summary judgment. The pivotal question, and one undecided in this jurisdiction, is whether the correctness of a pretrial denial of summary judgment may be reviewed on appeal from a final judgment entered following a full trial on the merits. There is conflicting authority on this question. While a majority of jurisdictions that have addressed the question have ruled that such a denial is not reviewable, Annotation, *Reviewability of Order Denying Motion for Summary Judgment,* 15 A.L.R.3d 899, 922–25 (1967), one treatise contends that "[after] the entry of judgment following the trial on the merits ..., the party who unsuccessfully sought summary judgment may argue that the trial court's denial of the Rule 56 motion was erroneous." 10 C. WRIGHT, M. MILLER & M. KANE, FEDERAL PRACTICE AND PROCEDURE § 2715, at 636–38 (2d ed. 1983) (hereinafter "WRIGHT & MILLER").[5]

We find the majority position persuasive. A full trial on the merits should ordinarily lead to a more just and truthful result. Permitting review of the denial of summary judgment could lead to the "absurd result that one who has sustained his position after a full trial ... might nevertheless be reversed on appeal." *Navajo Freight Lines, Inc. v. Liberty Mutual Insurance Co.,* 12 Ariz.App. 424, 428, 471 P.2d 309, 313 (1970):

> To deny review seems to be unjust. But to grant it ... would be unjust to the party that was victorious at trial, which won judgment after the evidence was more completely presented, where cross-examination played its part and where witnesses were seen and appraised.... The greater injustice would be to the party which would be deprived of the jury verdict. Otherwise, a decision based on less evidence would prevail over a verdict reached on more evidence and judgment would be taken away from the victor and given to the loser despite the victor having the greater weight of evidence. This would defeat the fundamental purpose of judicial inquiry.

*Evans v. Jensen,* 103 Idaho 937, 945, 655 P.2d 454, 458 (1982) (quoting *Home Indemnity Co. v. Reynolds & Co.,* 38 Ill.App.2d 358, 366–68, 187 N.E.2d 274, 278 (1962)). *See also Bell v. Harmon,* 284 S.W.2d 812, 814 (Ky.1955); *Bigney v. Blanchard,* 430 A.2d 839, 842–43 (Me.1981).[6]

it never filed a statement controverting the facts Morgan alleges resolved the custom and practice issue. After argument on the cross-motions, Judge Bacon orally ruled that there were material issues of fact precluding the grant of summary judgment to either party but did not identify which factual issues were unresolved. While in our view, it is not readily apparent that the three "facts" in the 12-I(k) statement to which appellant directs our attention persuasively settled the custom and practice issue, in light of our holding that a denial of summary judgment after a trial on the merits is unreviewable, we need not determine the basis of Judge Bacon's ruling.

**5.** Our case of *Jenkins v. Parker,* 428 A.2d 367 (D.C.1981), cited by the treatise, deals only with the pretrial appealability of a denial of a summary judgment motion. Two cited cases, one federal and one state, do support the treatise's position. In the federal case, *Savarin Corp. v. National Bank of Pakistan,* 447 F.2d 727 (2d Cir.1971), the Second Circuit considered the merits of the appellant's summary judgment motion but the opinion does not discuss the propriety of doing so; thus its persuasive authority is limited in the face of contrary federal

authority that explicitly refuses to consider denial of summary judgment motions. *See Boyles Galvanizing & Plating Co. v. Hartford Accident & Indemnity Co.,* 372 F.2d 310, 312 (10th Cir.1967) (denial not appealable and issues were litigated). However, the federal cases on either side do not do much to elucidate the debate; therefore we concentrate on the extensive state case law that develops the arguments relevant to this question. The rationale of WRIGHT & MILLER's state case, *Balson v. Dodds,* 62 Ohio St.2d 287, 405 N.E.2d 293 (1980) is discussed below.

We also note and distinguish the law of jurisdictions where a denial of summary judgment is made appealable by statute. *See Gross v. Midwest Speedways, Inc.,* 81 Wis.2d 129, 133–35, 260 N.W.2d 36, 38 (1977); *Ragnar Benson, Inc. v. Wm. P. Jungclaus Co.,* 167 Ind.App. 628, 633–35, 340 N.E.2d 361, 365 (1976).

**6.** Similarly, some courts have stated this point from an appellate perspective rather than from the position of the losing litigant. *American Physicians Ins. Co. v. Hruska,* 244 Ark. 1176, 1178–81, 428 S.W.2d 622, 624–25 (1968) (final judgment should be tested upon the record as it exists at the time it is rendered rather than at

An additional rationale presented in some jurisdictions focuses on the function the summary judgment procedure serves in the litigation process. Summary judgment is not a substitute for a trial; it exists as a mechanism to decide whether there exists any truly disputed material facts. Once the determination is made, rightly or wrongly, that there are issues of fact that can be resolved only after full hearing, the summary judgment procedure has no further relevance:

> [T]his preliminary procedural device used exclusively to determine actual triability of the controversy has fulfilled its purpose and spent its force, and has become what is known in law as functus officio.

*Bigney v. Blanchard, supra,* 430 A.2d at 842.[7]

The minority position, advocated by WRIGHT & MILLER and set forth in *Balson v. Dodds,* 62 Ohio St.2d 287, 288–90, 405 N.E.2d 293, 295 (1980), contends, however, that

> [i]f we were to [rule] the above order is nonreviewable on appeal from a subsequent adverse final judgment, appellant would be required to choose *either* trial on the merits without preserving for appellate review the trial court's alleged

error on summary judgment *or* immediate appellate review of the trial court's alleged error on summary judgment without preserving her right to trial on the merits. Thus, the conjunction of the above rules would unfairly present appellant with a Hobson's choice. [Emphasis in original.]

We think this analysis goes too far. Our holding that denial of summary judgment is unreviewable in no way prejudices the substantive rights of the party that was denied summary judgment. In a properly litigated case, when it appears during the course of trial that factual issues are indeed not in dispute and are not jury questions, the party denied summary judgment can move for a directed verdict or a JNOV at the appropriate time (as appellant in fact did in this case). Denial of these motions are of course appealable after an adverse jury verdict. *See Bigney v. Blanchard, supra,* 430 A.2d at 842–43. In addition, "any legal rulings made by the trial court [at summary judgment] affecting that final judgment can be reviewed...." *Evans v. Jensen, supra,* 655 P.2d at 459.[8] Thus a true "Hobson's choice" in the jurisprudential sense is not really presented by this case.[9]

---

the time the motion for summary judgment is denied as deficiencies in evidence at that stage of the proceeding may well be supplied by evidence from trial). This preference for appellate review of a trial record over a less complete summary judgment record controls even where, as in this case, both parties moved for and were denied summary judgment. *Hamiltonian Fed. Sav. & Loan Ass'n v. Reliance Ins. Co.,* 527 S.W.2d 440, 444–45 (Mo.App.1975) (denial of summary judgment is not an appealable order; trial court cannot be faulted for seeking all the facts which it might reasonably consider in its final judgment).

**7.** This concept has also been expressed more simply that any error in denial is "merged" into the subsequent trial, *Banwart v. Okesson,* 83 Ill.App.3d 222, 223–25, 403 N.E.2d 1234, 1236 (1980), or becomes "moot" when the court reviews the evidence upon trial. *Gosnell v. Waldrip,* 158 Ga.App. 685, 686, 282 S.E.2d 168, 169 (1981). *See also MAS Corp. v. Thompson,* 62 N.C.App. 31, 33–35, 302 S.E.2d 271, 274 (1983) (making the policy argument that denial of summary judgment should not be reviewed because the purpose of summary judgment, to bring litigation to an early decision on the merits

"without the delay and expense of trial," cannot be served after a trial).

**8.** *See also Gumm v. Combs,* 302 S.W.2d 616, 617 (Ky.1957) (as with other interlocutory rulings by a trial court on a question of law, an order denying summary judgment on this ground is properly reviewable); *Navajo Freight Lines, Inc., supra,* 471 P.2d at 313 (if the denial were made strictly on a point of law, and that because of such ruling the losing party was precluded from offering evidence or urging the point at trial, then there might be some logic in permitting review of the denial of summary judgment). We also note that in *Bigney v. Blanchard, supra,* the court did not seem to make a distinction between factual and legal objections to summary judgment in its requirement that objections be reasserted in a later motion during or after trial. We need take no position on this issue as appellant reasserted the legal arguments advanced on this appeal in his JNOV motion in the trial court.

**9.** THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 675 (unabridged ed. 1969) defines "Hobson's choice" as "the choice of taking either that which is offered or nothing; the absence of

*Balson v. Dodds, supra,* 405 N.E.2d at 295, also makes the policy argument that "such a scheme would inhibit effective and consistent appellate court scrutiny of trial court compliance with pre-trial procedure." While it is of course important that trial courts follow proper pretrial procedure, we are not willing to sacrifice for this goal a judgment arrived at by the truthseeking process of trial.[10] Furthermore, even if we were to recognize some principle under which to review denials of summary judgment, such review might very well be limited to a narrow band of cases that would do little to advance trial court review. We note that such an intermediate position has in fact been adopted as the rule in Maryland. In *Metropolitan Mortgage Fund, Inc. v. Basiliko,* 288 Md. 25, 26–28, 415 A.2d 582, 583 (1980), the Maryland Court of Appeals decided that it would review the denial of summary judgment only for a clear abuse of discretion. The court arrived at this position by first recognizing that while a trial court cannot draw upon any discretionary power to grant summary judgment,

> it, ordinarily, does possess discretion to refuse to pass upon, as well as discretion to affirmatively deny, a summary judgment request in favor of a full hearing on the merits; and this discretion exists

even though the technical requirements for the entry of such a judgment have been met.

*Id.* (citing *Virgil v. Time, Inc.,* 527 F.2d 1122, 1131 n. 15 (9th Cir.1975), *cert. denied,* 425 U.S. 998, 96 S.Ct. 2215, 48 L.Ed.2d 823 (1976) and other federal cases). *See also* 6 J. MOORE, W. TAGGART & J. WICKER, MOORE'S FEDERAL PRACTICE ¶¶ 56.15[6], 56.23 (2d ed. 1987), 10A WRIGHT & MILLER, *supra* § 2728.[11] The court then reasoned that it should therefore "be loathe indeed to overturn, on a very narrow procedural ground, a final judgment on the merits," *Metropolitan Mortgage Fund, Inc. v. Basiliko, supra,* 288 Md. at 28–29, 415 A.2d at 584, and would review the denial of summary judgment only when that discretion has clearly been abused (although noting that several previous Maryland cases permitted unrestricted review without explanation). *Id.* Clearly, this standard of review would correct only the most extreme abuses of pretrial procedure by a trial court.

Therefore, although we announce today a general rule that denial of summary judgment after a trial and final judgment is not an appealable order, as a case of first impression, we do not foreclose the possibility that the clear abuse of discretion standard[12] or one of the exceptions recog-

---

a real choice or alternative [after Thomas Hobson (1544–1631), of Cambridge, England, who rented horses and gave his customers only one choice, that of the horse nearest the stable door]." In legal parlance, the expression has come to mean a choice that forces a party to choose between or abandon legal rights. *Minnesota Bd. for Community Colleges v. Knight,* 465 U.S. 271, 299, 104 S.Ct. 1058, 1073–74, 79 L.Ed.2d 299 (1983) (Brennan, J., dissenting). Given that a summary judgment movant's substantive rights are preserved and that the movant still has an oportunity to present the case on the merits, the only movant seeking review of a denial of his motion is one who through the failure of the opposing party to take some action (this case and *Balson v. Dodds, supra* (failure of opposing party to file timely answers to request for admissions)), has an opportunity to win at summary judgment where the movant could not otherwise do so on the merits. Although parties occasionally win on these grounds, we see no reason to devise a rule sanctioning such an outcome after a trial on the merits has taken place.

**10.** Even a member of the *Balson v. Dodds* court later recognized that perhaps that court might consider whether a trial court's error in denying summary judgment could be considered harmless error in light of the evidence adduced at trial. *See Dupler v. Mansfield Journal Co.,* 64 Ohio St.2d 116, 127 n. 11, 413 N.E.2d 1187, 1195 n. 11 (1980) (Justice Brown concurring in the judgment).

**11.** We note that it might be possible to read WRIGHT & MILLER, *supra,* § 2728 (trial court has discretionary power to deny summary judgment) with § 2715 (party denied summary judgment can appeal after trial on the merits) to yield an interpretation compatible with the Maryland rule.

**12.** We also note that in *Metropolitan Mortgage Fund, Inc. v. Basiliko, Inc., supra,* the Maryland court arrived at this intermediate position of limited review without citation to the case law reviewed in this opinion that presents strong reasons against any review of denials of summary judgment.

nized in other jurisdictions [13] might apply in an appropriate case where review of a denial of summary judgment would not "defeat the fundamental purpose of judicial inquiry." *Home Indemnity Co. v. Reynolds & Co., supra,* 38 Ill.App. at 366–68, 187 N.E.2d at 278. In this case, however, appellant does not argue nor do we see a need to invoke the clear abuse of discretion standard and reach the denial of appellant's summary judgment motion. Although appellant contended that he was entitled to summary judgment based upon his three undisputed facts relating to the custom and practice issue, appellee noted in its memorandum opposing summary judgment and we observe as well that appellant's "undisputed facts" on their face do not appear to either convincingly resolve the custom and practice issue [14] or eliminate the need for other extrinsic evidence such as the intent of the drafters in resolving the ambiguity of Section 19. Thus, this is clearly not a case where the exercise of the trial court's discretion to require a case to go to trial should be disturbed.[15]

### III. *Jury Contract Interpretation*

█ We now turn to appellant's contention that the plain language of Section 19 of the Faculty Manual establishes its applicability to situations such as his as a matter of law. The language he relies on appears in subsection (a) of Section 19 entitled "Termination for Cause" which states that:

The University reserves the right to terminate an appointment with continuous tenure, or of a probationary or special appointment before the end of the specified term, for adequate cause shown. Adequate cause for dismissal will be related, directly and substantially, to the fitness or performance of the faculty member in his or her professional capacity as a teacher or researcher or creative member of his or her professional field.

Morgan contends this language is unambiguous and is capable of only one clear and definite meaning; that it prohibits any termination of such faculty except after cause has been established by the procedures set forth in parts (b)–(g) of Section 19 without any exception permitting termination by way of rescission. Therefore he argues that the issue was incorrectly submitted to the jury and the trial court erred in not construing the contract itself and in not granting appellant judgment notwithstanding the verdict. *Howard University v. Best,* 484 A.2d 958, 966–67 (D.C.1984).

In *Best,* we held that

if a contract is ambiguous, and the evidence supports more than one reasonable interpretation, the interpretation is a question of fact for the jury. But if the meaning of a contract is so clear that reasonable men could reach but one conclusion or no extrinsic evidence is necessary to determine the contract's meaning, then contract interpretation is a matter for the court. [Citations omitted.]

In resolving this issue we note that it has been observed:

---

13. *See St. Paul Fire and Marine Ins. Co. v. Speerstra,* 63 Or.App. 533, 536–37, 666 P.2d 255, 257 (1983) (denial of respondents' motion for summary judgment was reviewable where, because final judgment was entered for respondents, they had no reason or means to assert denial of summary judgment motion was error); *In re Renteria,* 624 S.W.2d 353, 354 (Tex.App. 1981) (recognizing rule against review but making an exception in this case on the facts).

14. *See* note 4, *supra.*

15. Appellant alternatively argues that Judge Bacon failed to determine whether Section 19 was ambiguous because she misread *Bason v. American University,* 414 A.2d 522 (D.C.1980), to stand for the proposition that custom and practice are necessarily part of all university/faculty em-

ployment contracts irrespective of the plain language of the contract. Thus, despite the fact that Judge Bacon might have found Section 19 to unambiguously require that AU follow Section 19 procedures before termination, she required a trial for the taking of additional custom and practice evidence (this argument apparently hypothetically concedes that Judge Bacon believed that appellant's undisputed facts on custom and practice were an insufficient basis for summary judgment). Therefore, appellant argues that he may have been incorrectly denied summary judgment. We need not address this issue as we undertake a review of Section 19 ourselves and hold, *infra,* that it is indeed ambiguous. Thus we need not speculate on Judge Bacon's reasoning as she correctly ruled that a jury trial was necessary to interpret the contract.

[S]ome of the surrounding circumstances always must be known before the meaning of the words can be plain and clear; and proof of the circumstances may make a meaning plain and clear when in the absence of such proof some other meaning may also have seemed plain and clear.

3 A. CORBIN, CORBIN ON CONTRACTS § 542, at 100–03 (3d ed. 1960) (footnote omitted). Furthermore, while extrinsic evidence of the parties' subjective intent may be resorted to only if the document is ambiguous, "extrinsic evidence may be considered to determine the circumstances surrounding the making of the contract so that it may be ascertained what a reasonable person in the position of the parties would have thought the words meant." *1010 Potomac Assoc. v. Grocery Mfrs. of America, Inc.,* 485 A.2d 199, 205–06 (D.C.1984) (citations omitted). Thus while the determination of whether or not a contract is ambiguous is a legal question, *Holland v. Hannan,* 456 A.2d 807, 815 (D.C.1983); *Friedman v. Thomas J. Fisher & Co.,* 88 A.2d 321, 323 (D.C.1952); *see* Snow, *Contract Interpretation: The Plain Meaning Rule in Labor Arbitration,* 5 FORDHAM L.REV. 681, 685 (1987), it follows that we should be mindful of the trial court's familiarity with the surrounding circumstances in reviewing its determination of this issue on the JNOV motion.

Within this framework of analysis, the specific question before us is this: can we say that a reasonable person, looking at the documents in context, would have to conclude that Section 19's language concerning terminations applies without a doubt to a situation where a faculty member is terminated by means of rescission for failing to inform a university that he or she holds a simultaneous position at another university? Judge von Kann concluded that sufficient ambiguity existed to submit this question to a jury. In his order denying appellant's JNOV motion he stated:

A fair reading of Section 19(a) seems to indicate that the provisions of that Section are intended to govern termination based on a faculty member's inadequate performance of duties rather than misrepresentations made in the course of

obtaining his employment in the first place. Certainly there is nothing in the language of Section 19 which expressly abrogates the University's normal right to rescind a contract based on material misrepresentation. There is no reason that such an abrogation would not be given effect if it had been plainly and unequivocally set forth in the agreement. For example, Dr. Morgan would definitely have been entitled to the benefits of Section 19 had that section contained a sentence such as the following: American University renounces its right to rescind a faculty member's employment on grounds that he or she made a material misrepresentation to the University in obtaining employment and agree that, before any faculty member may be terminated on such grounds, he or she shall be afforded the procedures set forth in this Section 19. Section 19 as it is now framed contains no provision of this sort.

We adopt this reasoning in affirming the determination that AU's incorporation of Section 19 into the contract did not as a matter of law unambiguously limit or abrogate AU's rescission rights it otherwise had under contract law principles.

Appellant nevertheless insists that AU has so "unnecessarily complicated" the case that it was able to "mislead" the trial court into unfairly permitting AU to use the "retrospective fiction" of rescission to rephrase the basis of its decision to terminate Morgan and escape its contractual obligations under the contract. It is appellant however who misconstrues the law. Contrary to appellant's protestations, the doctrine of misrepresentation and the remedy of rescission are no more fictional than contractual rights themselves. As Judge von Kann noted:

There is no question that, under hornbook principles of contract law, a party which has entered into a contract in justifiable reliance on material misrepresentation by the other party has the right to rescind the contract so obtained. Such a rescission normally eliminates any of the benefits which the guilty party might have otherwise derived from the contract. However, the right of rescission under these circumstances can be abro-

gated or limited by statute, agreement or otherwise. A common example of such limitation is an incontestibility clause in an insurance contract.[16]

The trial court correctly recognized that Section 19 did not necessarily make this doctrine inapplicable to appellant's situation.[17] In sum, we conclude that interpretation of the appellant's right to Section 19 procedures was properly submitted to the jury.

*Affirmed.*

---

16. *See* E. Farnsworth, Contracts, § 4.9 at 233 (1982); *Dresser v. Sunderland Apartments Tenants Ass'n,* 465 A.2d 835, 839–40 (D.C.1983) (doctrine of misrepresentation and remedy of rescission apply in this jurisdiction).

Appellant's reliance on *Cleveland Bd. of Education v. Loudermill,* 470 U.S. 532, 539 n. 5, 105 S.Ct. 1487, 1492 n. 5, 84 L.Ed.2d 494 (1985) for his "retrospective fiction" argument is misplaced. *Loudermill* held that constitutional property rights in continued state employment could only be terminated by procedures that met due process. Appellant never had any rights other than contract rights and cannot invoke the protections of the Fourteenth Amendment.

17. It is important to recognize that the doctrine of misrepresentation and its concurrent remedy of rescission apply in this case because the misrepresentation was made prior to the formation of the contract. Therefore AU could argue that had it known of appellant's position at Golden Gate, it would never have entered the contract. On the other hand, if a faculty member engaged in no misrepresentation during negotiation of the contract but then subsequently, during the term took an outside position without disclosure to the University, rescission might be an inappropriate theory for termination. In that situation, not before us today, we express no opinion as to whether a faculty member would be entitled to the protections of Section 19.