# F. A. NORTH & CO. v. CLAYTON WILLIAMS.

ERROR TO THE COURT OF COMMON PLEAS NO. 3 OF PHILADELPHIA COUNTY.

Argued March 28, 1888—Decided April 23, 1888.

The plaintiff by a written contract leased a piano from the defendant for twenty-five months at a certain sum payable in monthly instalments, with the privilege during or at the end of the term of purchasing the instrument for the difference between the said sum and the amount of monthly instalments paid.

The agreement contained a clause whereby in default of any monthly payment the lessor should re-deliver the instrument within five days thereafter, or permit the lessor to enter upon any premises where it might be and without let or hindrance take away the same.

The plaintiff being in default of payment for more than five days, the defendant's agent entered at plaintiff's door saying he came to tune the piano, and while the plaintiff went to call his wife, the agent with two employees, and against the protests of the plaintiff and his wife, took the piano away.

### Statement of Facts.

In an action for damages, the plaintiff testifying inter alia that when he signed the contract the defendant's agent said he should have three years in which to pay for the instrument as a purchase, which was denied by the agent: *Held*,

1. That the written contract, duly executed, spoke for itself and could not be overthrown upon the mere opposing testimony of one party, contradicted by the oath of the other.

2. That no previous demand for the piano, nor the exhibition of any authority, was necessary, in order to justify the entry and the removal of the instrument.

3. That, even if the entrance of the agent was obtained upon a false reason given, under the contract the entry and removal of the instrument was consentible and gave no ground for an action of trespass.

Before GORDON, C. J., PAXSON, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY and STERRETT, JJ., absent.

No. 252 January Term 1888, Sup. Ct.; court below, No. 247 December Term 1886, C. P. No. 3.

On December 2, 1886, an action was begun by Clayton Williams against F. A. North, trading as F. A. North & Co. The narr. charged:

For that whereas heretofore, to wit, on or about the 28th day of May, 1886, at the county aforesaid, the said defendant, through its duly authorized agents and employees, called at the residence of the said plaintiff, and, through false and fraudulent representations to the said plaintiff, to wit, that they had been sent there at the request of the said plaintiff's wife to tune a piano, the property of the said plaintiff, gained admittance to the said plaintiff's residence, and, against the protests of the said plaintiff and his wife, at the county aforesaid, carried the said piano away from the said plaintiff's residence, and now retains the said piano, the property of the said plaintiff, from the said plaintiff, to the damage of the plaintiff five thousand dollars.

And for that whereas the said defendant, on or about the 2d day of October, A. D. 1884, at the county aforesaid, sold and delivered the said piano to the said plaintiff for the sum of one hundred and fifty dollars, on credit, and agreed with the said plaintiff that the said plaintiff was to have as long a time as three years, if he so desired, in which to pay the said defendant for the said piano. Nevertheless, the said defendant, at the county aforesaid, collected from the said plaintiff

the sum of seventy-six dollars, as part payment for the said piano, which sum of money, together with the said piano so unjustly and unlawfully taken and carried away from the residence of the said plaintiff by the said defendant as aforesaid, he, the said defendant, now unlawfully and unjustly detains from the said plaintiff, and refuses to return or deliver to the said plaintiff, although often requested so to do, to the damage and injury of the said plaintiff five thousand dollars.

At the trial on October 18, 1887, under the plea of not guilty, it was shown that on October 2, 1884, The Wilcox & White Organ Co., through its agents F. A. North & Co., of Philadelphia, by a written contract of the usual form in such cases, leased and hired to Clayton Williams one piano for the term of twenty-five months, at the rental of $150, payable $10 cash in hand, and the balance in monthly payments of $5 on the second day of each month. The lease inter alia provided that the lessee " will at any time, when required, exhibit the said piano to the said party of the first part or their agents ; and in default of any monthly payment the said lessee agrees to re-deliver said piano to the said F. A. North & Co., or their authorized agent, within five days after such payment shall become due, or permit their agent to enter into and upon any premises where said piano may be, and without let or hindrance take away the same." There was also a provision for a sale of the piano to the lessee, if at any time during the term or at the end thereof he should wish to purchase it, upon payment of such sum as would amount with previous payments of hire to the sum of $150 ; but it was expressly understood and agreed that no title, legal or equitable, should vest in the lessee until the terms of purchase were complied with and a bill of sale delivered. The instrument was executed in the following manner :

Witness our hands and seals the date first hereinbefore written.

THE WILCOX & WHITE ORGAN CO.,
By its duly authorized agents,
F. A. NORTH & CO. [L. S.]
his
CLAYTON × WILLIAMS. [L. S.]
mark.

Witness present:
GEO. MILLER.

I have received a copy of the above Agreement, and have no understanding, verbal or otherwise, differing from it.

his<br>
CLAYTON  &times;  WILLIAMS.<br>
mark.

Witnessed by
     GEO. MILLER.

The plaintiff, called in his own behalf, testified:

I am the plaintiff; my business is waiter and public caterer. In 1884 I was working for John Wannamaker as waiter. Miller said he was agent for F. A. North & Co., and told me he had seen my wife; also told me to sign the agreement. I was waiting on some customers at the time, and after I got through Miller showed me the lease, and asked me to put my mark to it. I haven't met him since. I made my mark to the agreement. He said I had three years to pay for the piano; and if I got sick, or was out of work, his firm would give me time to pay in, or be lenient with me. Piano was in the house at the time I signed the lease.

Q. How much did you pay?

A. About $76. I have receipts for all the money paid. I think there was a loose receipt. I was laid off two or three weeks, and got a little behind in the payment on account of sickness.

Q. Now, tell the jury what was done on the day defendant took the piano away? A. A man came to my house and rang the door-bell. I was in the kitchen, and when I got to the vestibule door the man was in the entry. I asked him what he wanted. He said he had come to tune the piano. I told him to wait, and I would call my wife. I left the man in the vestibule, and went to call my wife. When I got back he had gone into the parlor, and had turned up the piano and had taken a leg off of the piano. This man and two others—Benjamin Bush was the man, I think. · I went for a policeman. Two rough-looking men came into the house and helped to move the piano. I asked the first man to show his authority to my wife to take the piano away. I said, "I wont have your taking the piano away." He said he had all the authority he wanted, and would get it out by fair or foul means. They got ahold of the piano and took it out. I couldn't find a police-

### Charge of Court below.

man. I saw North & Co. afterwards at the store. He said he had ordered the men to take the piano away. I told him my wife would bring the money that was due. He said he wanted no excuses, must have the piano. I afterwards made an offer to North & Co. to take an organ for $100 and pay the difference.

On cross-examination, the witness testified that he did not tell Miller he could not read or write.

Victoria Williams, the plaintiff's wife, testified to the same facts stated by the plaintiff as to the manner in which the piano had been taken away.

On the part of the defendant, George Miller, the witness to the lease, testified that the day it was executed he called on Williams at Wannamaker's: he was busy waiting on people: "I waited until he was through, then I showed him this agreement and explained it to him, and he put his mark on it." Cross-examined: "I explained the lease to Williams; did not read it to him; he did not ask me to read it, he was in a hurry. It took ten to fifteen minutes to explain it to him." It was also shown that in the removal of the piano there was no disturbance of any kind and no force used. These facts in the testimony adduced in the defendant's case, were not denied by any rebutting evidence.

The court charged the jury and answered the points submitted by the defendant as follows:

There are two points in this case—one for you, the other for me. . There was a written contract signed by the plaintiff to which he has affixed his mark, a lease of a certain piano. The piano was to be paid for at so much every month, and at the end of twenty-five months, or at any time during the lease, the plaintiff, by paying up the full sum of $140, ten dollars having been paid down first, could obtain the title to the piano. Now, there is one important point in this, and that is the fact that this plaintiff in this case was a man who could not read or write, and this fact was known to the agent of the defendant who made this contract with him. This is a matter for the jury, because a man who cannot read is bound to take some precaution to find whether what he signs is what he means to sign, and if he neglects the precaution he must take

the consequences of his neglect; but if he relied upon the agent of the other party for a knowledge of the contract, and this knowledge was not properly communicated to him, the condition of things is very different. Mr. Miller, the defendant's agent, says that he did not read this contract to Williams, but did explain it to him, but Williams, on the contrary, says that it was not read to him, and that it was not certainly adequately explained to him, and this becomes of importance in a certain aspect of the case, because part of this contract is that no verbal understanding different from the written contract should exist between the parties. Mr. Williams signed this, as well as the other stipulations, and if he fully understood the agreement and allowed any terms of the contract to be omitted, and then signed this contract, he would undoubtedly be bound by what he signed; but whether he depended on his own knowledge or relied on defendant's agent and whether defendant's agent fully and fairly explained these things to him is for you to decide. I think that in an ordinary case of a man able to read and write and who relies upon himself and not upon the other side for knowledge, there is a burden of proof upon him to show that he was imposed on, and the evidence would have to be uncontradicted testimony or testimony which is well corroborated or which would require no corroboration, were the case before a chancellor; but Mr. Williams, in the present case, relied upon Mr. Miller for his understanding of this contract, and the sole point for you is whether Mr. Miller performed his full duty in explaining to Mr. Williams what the contract was; and if Mr. Miller discharged his full duty, then if Mr. Williams recovers at all it must be under the contract.

[If, however, Mr. Miller failed to explain to Mr. Williams what was in this contract, and that there could be no verbal contract, Mr. Williams is not bound by the written contract; and if there was an agreement to extend this contract, not for twenty-five months, but for three years, and if Mr. Miller failed to explain to Mr. Williams that no verbal contract was binding, owing to this provision, then Mr. Williams could recover on the fact that the verbal contract is still in force; but the jury must be thoroughly satisfied that there was such a verbal contract outside of the written one,][3] and Mr. Wil-

liams must satisfy you that he did not have this contract thoroughly explained to him; and you must also be satisfied that the real agreement between the parties was for three years, and not for twenty-five months.   The existence of the three years' lease, and the non-application of the written contract, depends upon the failure of Mr. Miller to properly explain the latter.   If Mr. Miller did attempt to explain this contract to Mr. Williams, and did explain it to him, then Williams is bound by the contract; but if Mr. Williams depended upon Mr. Miller for his knowledge, and there was a verbal contract outside, then that verbal contract would be the one in this case.   But it all depends upon the evidence, which is for you.   Supposing you find that there was no outside verbal contract, and Mr. Miller explained to Mr. Williams, and Mr. Williams signed it without asking for an explanation, he is bound by the written contract.

[The real question is whether the defendant in this case exerted his rights improperly in the mode in which he got possession of the piano.   The clause in regard to that is this: The plaintiff here agrees whenever required he will exhibit the said piano to the said party of the first part on their request, and in default of any monthly payment the said lessee agrees to re-deliver the said piano or permit their agents to enter into any premises where the piano may be and without let or hindrance remove the same.   Now, in the view I take of this agreement, and in view of the undisputed evidence, I instruct you that the defendant in this case has not exercised his rights under this agreement in a proper manner; the evidence is that the agents of defendant by a trick obtained entrance into the house; under the view I take of this agreement, he should have made some sort of demand, and if the demand had been refused he has all his legal rights as owner of the piano against the person who is holding it, but he did not exercise his rights, in my judgment, properly in the manner in which he obtained the piano.] [4]   I think he is liable for damages in this case.   The question then comes what the damages are.

[North & Co. obtained the piano, I take it, in an illegal way, and the question is what damages did plaintiffs suffer. I am not prepared to say that punitive damages should not be

given. My ruling is, that this is not a case which would call for high punitive damages, but I cannot say, as a matter of law, that no punitive damages can be given, because, if the defendant obtained possession of property by a trick, in violation of an agreement, the other man is entitled to damages] [5] such as will compensate him for the loss he suffers, and also punitive damages; but if it is true that there was no oral contract but only this written one, then North & Co. were undoubtedly the owners of the piano, and it was only an attempt by the owners to procure what was really their own property. It is for you to say whether there was any verbal contract or not in this case, and to do that you must go into the question as to whether Mr. Williams had that agreement explained to him properly by Mr. Miller.

The points submitted by the defendant, with their answers, were as follows:

1. The agreement between plaintiff and defendant being a bailment, the plaintiff was bound to pay the rent as it accrued, according to the terms of the agreement, and in default of such payment, defendant had the right to take the piano.

Answer: They had no right to take it by any force; they might have taken it, perhaps by coming and showing authority, but they could not take it by force. [1]

3. The agreement being a bailment, and the evidence showing that the plaintiff was in arrears in the payment of rent under its terms, your verdict should be for the defendant.

Answer: The three years' time would have no application to this point. It is true that the plaintiff was in arrears, and he was bound to give up the instrument, whenever the defendant should demand it, in a proper manner. [2]

The jury returned a verdict for the plaintiff for $93 damages, and judgment being entered thereon, the defendant took this writ assigning for error;

1, 2. The answers to the defendant's points. [1] [2]

3–5. The parts of the charge embraced in [ ] [3 to 5]

*Mr. Franklin Swayne* (with him *Mr. Chas. F. Hinckle*), for the plaintiff in error:

1. Trespass will not lie, because of the clause in the lease permitting the lessors' agent to enter upon the premises where

the piano might be and without let or hindrance to take away the same: Six Carpenters' Case, 8 Co. 146; Allen v. Crofoot, 5 Wend. 506; State v. Moore, 12 N. H. 42; Pallard v. Noaks, 2 Ark. 45; Boults v. Mitchell, 15 Pa. 371; Stone v. Knapp, 29 Vt. 501.

2. The court erred in submitting to the jury the verbal contract that plaintiff had three years to pay for the piano, upon the testimony of the plaintiff alone contradicted as it was by the written lease and the testimony of Mr. Miller: Murray v. Railroad Co., 103 Pa. 37; Phillips v. Meily, 106 Pa. 536; Sylvius v. Kosek, 117 Pa. 67; Day v. Osborn, 19 W. N. 443.

3. It was error to instruct that the defendant had not exercised his rights in the proper manner; that he should have made some sort of demand. Where the lessor has express power in the agreement to regain possession of the property leased, on failure to comply with the terms of the bailment, no demand is required: Enlow v. Klein, 79 Pa. 488; Brunswick & Balke Co. v. Hoover, 95 Pa. 508.

*Mr. Lewin W. Barringer*, for the defendant in error:

1. The only point in the case is, did North & Co., by their duly authorized agent, commit a trespass in getting into Williams' house, by a lie, a trick, and a fraud. Plaintiff contends that this is a trespass, to fraudulently enter a house by means of a lie and false pretence. It is admitted in the testimony of the defendant that he did not intend to tune the piano, but it was for the purpose of carrying it away that the lie was told.

2. The agent of the defendant refused to produce or show plaintiff or his wife authority for his action in attempting to carry away the piano, and when asked for his authority the agent replied, "I have all the authority I want" and that he would take it away by fair or foul means. They then took hold of the piano, against the protest of plaintiff and his wife, and took it away. This is contrary to the terms of the agreement, which were that Williams would re-deliver the said piano to North & Co. or their authorized agent or permit their authorized agent to enter into his premises in a lawful manner: Moore v. Sheely, L. R. 8 App. C. 285.

3. Our answer to the various exceptions and assignments of

error to the judge's charge is that all of them are without merit, because the question whether this agreement was a sale or a bailment has nothing to do with the merits of the case. It is totally immaterial in the issue as disclosed by the pleading.

OPINION, MR. JUSTICE GREEN:

There is no evidence in this case upon which it would be possible to reform the contract between the parties. It is in writing and was duly executed in the presence of an attesting witness. It speaks for itself, and cannot be overthrown upon the mere opposing testimony of one party, contradicted by the oath of the other, who in this case was a disinterested person. The learned court below thought that this rule did not apply, because the plaintiff could not read or write, and that there was conflicting testimony as to whether the contract was explained to the plaintiff at the time of execution. The plaintiff did not testify that he could not read or write, but he did say that he did not tell Miller, defendant's agent, that he could not read or write. This, however, is immaterial, because Miller testified positively that he did explain the agreement to the plaintiff and the latter did not deny it, nor did he say that he did not understand it. He certainly did understand that it was for the acquisition of a piano at a price fixed, payable in monthly instalments of five dollars each. The only thing he speaks of as being different from the written instrument is that the agent said he was to have three years to pay for the piano. But he does not say that even as to this there was any positive agreement to that effect, or that on the faith of the assertion he executed the contract. It was error therefore to submit to the jury the question as to what the contract was, and this sustains the third assignment.

Some stress is laid in the argument upon the point that the man who took away the piano did not show his authority to do so. But the plaintiff himself testified that "he said he had all the authority he wanted," and the defendant testified that he instructed his agent " to get possession of the piano, because Williams was in arrear in the payment of instalments." It was not necessary that the agent should have or should exhibit any authority in writing.

The only remaining matter to be considered is the manner

in which possession of the piano was taken. The court below held that it was obtained illegally, because the defendant's agent told the plaintiff he wanted to tune the piano when in truth he wanted to remove it. The idea, as expressed in the charge, is that because entrance was obtained by means of a falsehood the defendant's agent was a trespasser, and the defendant was liable not merely for the technical trespass of entering the plaintiff's house without his permission, but also for taking away the piano and even for punitive damages. A careful examination of the testimony convinces us that this was an erroneous view to take of the case. The contract expressly provided that in default of payment of any instalment the lessee should re-deliver the piano to the plaintiff or his authorized agent within five days after the default, " or permit their agent to enter into and upon any premises where said piano may be, and without let or hindrance take away the same." Under this stipulation it is plain that the plaintiff was under an obligation after five days' default in delivery to permit the plaintiff or his agent to enter the premises and remove the piano. If this was the plaintiff's duty, it is difficult to see how he can acquire a cause of action as for a trespass, even if entrance was obtained by means of a false statement. He was bound to grant the entrance merely because he was in default, and whether the true or a false reason was given when entrance was asked, if he conceded it, the entry could not be a trespass. The subsequent taking of the piano could not be a trespass, because that was a contract-right expressly given, and if consent was given to the mere entrance upon the premises, the fact that a false reason for desiring it was given would not convert it from a consentible into a non-consentible entrance. If a citizen desired to see another upon business which he knew to be unpleasant to the latter and chose to assign some other than the real reason for asking admission, he certainly would not become a trespasser merely because he failed to give the true reason.

In the present case, however, there is not under the testimony any sufficient reason for saying that entrance was obtained by a falsehood. The plaintiff himself testified: " A man came to my house and rang the door-bell. I was in the kitchen, and when I got to the vestibule door the man was in

the entry." It would seem, therefore, that the man was already in the house when the plaintiff first saw him. The witness proceeds: "I asked him what he wanted. He said he had come to tune the piano. I told him to wait and I would call my wife." It is manifest that the falsehood was not made use of until after entrance had been obtained, and it cannot, therefore, qualify the fact of entrance. While entrance before the bell was answered might in strictest sense be regarded as a technical trespass, it would certainly by itself be damnum absque injuria in any case; but here it was effected in the exercise of a lawful right to have entrance in this particular house for the performance of a contract-right, and in such circumstances could not be viewed as an illegal act.

The subsequent subterfuge was of no consequence in any way. No violence or unnecessary force was used, and all that was done was precisely what the defendant had a legal right to do, to wit, " without let or hindrance take away the same." As to a demand being made, the very act of taking the piano was a demand for it. Repeated demands had previously been made for the money which was overdue and unpaid, but without success, and the only remaining demand to be made was for the instrument itself. Both the plaintiff and his wife said at the time the piano was taken that they were willing to pay and would pay the balance due, but in point of fact they neither did pay nor tender payment of any actual money or its equivalent. The defendant and his salesman both testified that they subsequently offered to return the piano if the balance due was paid, and this is not contradicted, but no more money was ever paid or tendered. All the assignments of error except the second are sustained.

Judgment reversed, and new venire awarded.