OPINION OF THE COURT
Arthur D. Spatt, J.
This is a motion by defendant for an order granting summary judgment in favor of the defendant dismissing the complaint. Plaintiff cross-moves to compel defendant to appear for an examination before trial, and to adjourn this motion until after defendant’s deposition is held.
BACKGROUND
On October 8, 1976, plaintiff executed a promissory note-security agreement in favor of Chemical Bank. The security agreement was of a blanket variety covering all of the assets of plaintiff, and provided, inter alia:
“Undersigned has delivered to the Bank as collateral security for the payment of said Liabilities, the following property: Equipment, Machinery, Fixtures, Furniture, In *518 ventory, Accounts Receivable, all as defined by the Uniform Commercial Code including all present or future personal property and fixtures of debtor now existing or hereafter acquired and wherever located.
“Bank shall have the rights and remedies of a secured party when a debtor is in default under a security agreement as provided under the Uniform Commercial Code, and it shall be then lawful for, and Debtor hereby authorizes and empowers Bank, with the aid and assistance of any person, to enter upon the premises, or such other place as the goods may be found and take possession and carry away the goods without process of law”.
After plaintiff defaulted on the note, Chemical retained the defendant to repossess and liquidate the collateral that was secured to the bank.
Plaintiff, in its complaint, asserts that defendant intruded upon and took possession of plaintiff’s premises on June 18, 1977, marked the inventory and equipment of plaintiff, and notified its customers that plaintiff was out of business and that its merchandise was to be sold at public auction. Defendant, in addition to a general denial, contends that the plaintiff, by its execution of the security agreement, consented to the intrusion of plaintiff’s premises and the taking possession of the chattels contained therein.
Stated simply, the basis for this motion for summary judgment is that the written consent of the plaintiff, in the security agreement, validates defendant’s actions in repossessing plaintiff’s assets on behalf of the Chemical Bank.
The moving papers of the defendant contain the affidavit of one Joseph Hodkin in which he states that he is an employee of the defendant who was assigned by Chemical Bank to repossess the goods and personal property of plaintiff. In furtherance thereof, on June 17,1977, he went to the plaintiff’s place of business and, finding the exterior gates locked, obtained the services of a locksmith who enabled him to gain entry onto the premises, whereupon he changed the locks on the doors.
Plaintiff, by affidavit of Marvin Fine, a stockholder and principal officer of the plaintiff corporation, states that the *519 defendant obtained admittance by forceable entrance. However, Mr. Fine admits that the locks were changed. Plaintiff asserts that it advised defendant “that a lot of merchandise was missing”, and that it was refused access to telephone calls. Mr. Fine asserts that defendant’s employees answered the phones and “advised whoever was calling that the plaintiff was out of business and that its merchandise was being put up for auction”. Mr. Fine concludes that “the net result of the actions of the defendant was a total disruption and destruction of plaintiff’s business”.
In essence, plaintiff charges that neither Chemical Bank nor defendant had “the right to break into the premises * * * by means of force” and once in, the defendant’s words on the telephone advising persons that the plaintiff “was out of business” are actionable.
THE LAW
Section 9-503 of the Uniform Commercial Code provides in pertinent part as follows: “Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace * * * Without removal a secured party may render equipment unusable, and may dispose of collateral on the debtor’s premises under Section 9-504.”
While there is no requirement that an express right to immediate possession of the collateral appears in the default provisions of the contract since such right emanates as a matter of statutory law (Uniform Commercial Code, § 9-503) to the secured party upon the occurrence of a default by the debtor (MGD Graphic Systems v New York Press Pub. Co., 52 AD2d 815, affd 42 NY2d 1018), here, Chemical Bank, through its agent, the defendant herein, became entitled to immediate possession of the collateral both by virtue of the express provisions of the security agreement and the provisions of section 9-503 of the Uniform Commercial Code. As stated in Matter of Iselin & Co. v Burgess & Leigh (52 Misc 2d 821, 823):
“On default, it would appear that petitioner became entitled to immediate possession of the collateral, both by virtue of *520 the express provisions of the security agreement and of section 9-503 of the Uniform Commercial Code.
“Thus, by both contract and statute, petitioner has established its right to take possession of the collateral, without judicial process, and it did so”.
This right to take possession of the collateral by a secured party on debtor’s default-may even be enforced against a third party in possession. (Long Is. Trust Co. v Porta Aluminum, 49 AD2d 579.)
In this case, the validity of the security agreement and the default of plaintiff are uncontroverted. Also, the description of the method by which defendant gained access to the property is not disputed by the plaintiff. The only issue before the court, therefore, is whether the means used by defendant to obtain possession without judicial process constituted a “breach of the peace” within the provisions of section 9-503 of the Uniform Commercial Code.
In this regard, the leading case is Cherno v Bank of Babylon (54 Misc 2d 277, affd 29 AD2d 767), in which a bank entered the premises of a debtor in default by means of a key obtained by a locksmith and removed the assets in question. This removal by the bank was further complicated by the fact that the bank was aware, at the time it entered and removed, that the debtor had assigned its assets “for the benefit of its creditors”. Held, there was no breach of the peace. “The short answer to it is that there was no breach of the peace * * * The classic definition of breach of the peace is ‘a disturbance of public order by an act of violence, or by an act likely to produce violence, or which, by causing consternation and alarm, disturbs the peace and quiet of the community’ * * * Thus, when in the course of repossession, the conditional vendee received a black eye, it was a question for the jury whether a breach of the peace had occurred * * * Here, however, the bank’s employees entered by use of a key, unauthorizedly obtained. Such an entry, the assignor’s consent aside, would constitute a breaking, but it is at least questionable whether in view of the consent to entry set forth in the security agreement (and to which the assignee took subject) the acts of the bank’s employees could be held to be a breaking (see People v. Kelley, 253 App. Div. 430, *521 and Alien v. Crofoot, 5 Wend. 506). But, breaking or not, there was nothing in what they did that disturbed public order by any act of violence, caused consternation or alarm, or disturbed the peace and quiet of the community. Nor was the use of a key to open the door an act likely to produce violence * * * Under the circumstances that existed during the times the bank’s employees entered the premises, there was as a matter of law no breach of the peace, Wood v. Phillips, 43 N. Y. 152, 156.” (Cherno v Bank of Babylon, 54 Misc 2d 277, 281-282, supra; see, also, Hunt v Marine Midland Bank Cent., 80 Misc 2d 329, citing Cherno with approval.)
The defendant, acting under a valid security agreement consenting to entry and possession of the plaintiff’s assets, and pursuant to the express provisions of section 9-503 of the Uniform Commercial Code, entered the plaintiff’s premises by use of a key unauthorizedly obtained. Such an entry, even if the chains were cut, under the circumstances of this case, does not, as a matter of law, constitute a breach of the peace. (Cherno v Bank of Babylon, supra.)
Once defendant gained entry, without breach of the peace, it could have carried away the merchandise and assets, if it so desired, and the subsequent behavior complained of by plaintiff is not actionable.
The final point to be considered is plaintiff’s contention that defendant’s employees “answered the phones and advised whoever was calling that the plaintiff was out of business and that its merchandise was being put up for auction”. It would not be improper for defendant to sell the plaintiff’s merchandise at auction. Therefore, the only portion of the complaint and affidavit in opposition of Marvin Fine that concerns the court is the assertion that defendant’s employees told persons on the telephone that plaintiff was out of business.
An examination of the complaint reveals that the single cause of action pleaded is a mixture of several causes of action. From its totality — and it is a relatively brief, seven paragraph pleading — one can extrude causes of action in trespass and conversion, which are here found to be unsupportable, as a matter of law. In addition, it is possible that a cause of action in prima facie tort or, more specifically, a *522 theory of intentional infliction of economic damage, was attempted to be pleaded. Although such cause of action was unartfully set forth, this court will presume that leave to amend would bring forth a pleaded cause of action on said prima facia tort theory.
“The key to the prima facie tort is the infliction of intentional harm, resulting in damage, without excuse or justification, by an act or a series of acts which would otherwise be lawful.” (Ruza v Ruza, 286 App Div 767, 769, republished 1 AD2d 669.) An essential element of the cause of action in prima facie tort is an allegation of special damages. (ATI, Inc. v Ruder & Finn, 42 NY2d 454.)
In addition to failing to allege special damages, there are other defects in this theory, as presented herein, since the alleged conduct of the defendant simply does not constitute the tort of intentional harm without excuse or justification.
Here there is no pleading, nor is there proof of intentional and/or malicious harm to plaintiff by the making of such telephone calls. These telephone calls, if true, were made in the light of the atmosphere and circumstances then existing. The plaintiff was in default in repaying a loan, and all its equipment, machinery, fixtures, furniture, inventory and accounts receivable, if any, were in the process of being possessed, removed and/or sold by the Chemical Bank. Such calls were not only made without “malice”, but could be reasonably expected.
A claim of prima facie tort does not lie where the defendant’s action has any motive other than a desire to injure the plaintiff (Korry v International Tel. & Tel. Corp., 444 F Supp 193; Hecht v Air Reduction Co., 41 Misc 2d 463). It is clear that the primary objective of defendant on June 18, 1977, was to take possession of plaintiff’s assets under a clear legal right.
In addition, it cannot be said that defendant’s actions were without excuse or justification. The defendant was acting under a contractual and statutory right and there was a reasonable basis for their actions. Defendant’s actions must be deemed a “justification” which the law will recognize.
Where there is no pleading or proof of an intent to injure *523 or malice, and where there is a legal justification for defendant’s actions, there can be no prima facie tort. (See Capano v Sostilio, 75 AD2d 759.)
Finally, plaintiff’s cross motion for an examination before trial of the defendant and to delay this motion until after said examination, is without merit. The plaintiff has submitted no reasons in support of such'a request. There has been no showing that there are material facts to be discovered which are unavailable to plaintiff (see CPLR 3212, subd [f]).
Furthermore, while most of the material facts in this case were within the knowledge of the parties, in the 14 months since the taking of plaintiff’s deposition, plaintiff apparently took no affirmative step to seek discovery. “A party may not claim that Tacts cannot be stated’ when its lack of knowledge results from its own voluntary inaction” (Lerner Stores Corp. v Parklane Hosiery Co., 54 AD2d 1072, 1073; Payne v Payne, 34 AD2d 375).
Accordingly, defendant’s motion for summary judgment dismissing the complaint is granted.