William C. STEICHEN, et al.,
Appellants,

v.

FIRST BANK GRAND, aka First Grand Avenue Bank of St. Paul, Ron Saxon Ford, Inc., Respondents.

No. C9–84–2063.

Court of Appeals of Minnesota.

Aug. 13, 1985.

Review Denied Oct. 18, 1985.

Richard G. Nadler, St. Paul, for William C. Steichen, et al.

Daniel A. Klas, Phillip D. Nelson, St. Paul, for First Bank Grand, aka First Grand Avenue Bank of St. Paul.

James A. Stein, St. Paul, for Ron Saxon Ford, Inc.

Heard, considered and decided by SEDGWICK, P.J., and WOZNIAK and RANDALL, JJ.

## OPINION

WOZNIAK, Judge.

Appellants William and Gloria Steichen seek review of the trial court's order denying their motion for new trial and/or amended findings of fact, and from the judgment subsequently entered. The final judgment awarded appellants out-of-pocket

losses for the wrongful repossession of their car by First Bank Grand; denied appellants punitive damages; dismissed the action in its entirety against Ron Saxon Ford, Inc.; and denied appellants' claim for minimum statutory damages against either respondent under Minn.Stat. § 336.9–507 (1982).

Respondent First Bank Grand appeals the ruling granting summary judgment in favor of appellants on the issue of wrongful repossession.

Respondent Ron Saxon Ford, Inc. appeals the trial court's denial of attorney's fees and costs. We affirm in part, reverse in part and remand.

## FACTS

On November 9, 1979, the appellants (Steichens) bought a 1979 Ford truck from Ron Saxon Ford, Inc. (Saxon) under a retail conditional sales contract. The truck was the Steichens' only vehicle. The contract provided for monthly payments of $133.56 for 30 consecutive months beginning December 24, 1979. Respondent Saxon assigned the sales contract to respondent First Bank Grand (First Bank) under a repurchase agreement.

The repurchase agreement between Saxon and First Bank provides that the dealer may sell the bank retail installment sales contracts it acquires from retail customers. It also provides that Saxon will repurchase repossessed vehicles, if repossession and delivery is made within 90 days after maturity of the earliest unpaid installment. Until repurchase, the bank may store the repossessed vehicle on Saxon's premises without cost. Saxon had no legal right under the repurchase agreement to control the decision to repossess.

The Steichens never made a payment on time to First Bank, yet First Bank always accepted late payments. A First Bank collections employee wrote the Steichens a letter on August 11, 1981, stating that $387.40 was due under their contract for payments from May, June and July 1981. Although the bank had accepted late payments in the past, the August 11 letter said

late payments were not condoned. It also stated that if the bank did not receive the $387.40 within five days, the bank would take whatever action necessary to collect the money.

On August 24, 1981, the Steichens made a payment of $150 and made another $150 payment on September 30, 1981. These, however, were the regular monthly payments due, and did not include any of the $387.40 still owed. The bank did not contact the Steichens from September 30, 1981 until repossession.

First Bank did not notify the Steichens that the contract was terminated, nor did it notify them it would repossess their truck. Before repossession, the Steichens had paid $2,683.38 to the bank. Moreover, during the course of the collection activities, First Bank contacted the Steichens' employers and discussed with them the delinquency status of their account.

On October 20, 1981, without prior warning to the Steichens, First Bank performed a self-help repossession and returned the truck to Saxon. The Steichens called First Bank's collection employee and demanded the return of their truck. The Steichens' attorney also sent a letter to the bank which demanded return of the truck and stated that the repossession was unlawful. On October 26, 1981, the Steichens filed a Chapter 13 Wage Earner Plan in U.S. Bankruptcy Court, which enjoined respondents from disposing of the repossessed vehicle. Both respondents refused to return it, however, with full knowledge that the repossession was unlawful.

In November 1981, the Steichens were forced to seek an order from the bankruptcy court for return of the truck, which they received. The Steichens then brought an action in Ramsey County for wrongful repossession.

Trial was scheduled to begin in April 1984. During pretrial conferences, all agreed that counsel would make no reference, either during jury selection or opening statements, to punitive damages sought. However, during his opening

statements, counsel for appellants made references to the punitive damages being sought by his clients. Based upon this misconduct, the trial court granted respondents' motions for mistrial.

Respondents then made separate motions for summary judgment. In early June 1984, the trial court issued an order granting Saxon's motion for summary judgment and dismissed the action in its entirety against Saxon. The trial court also granted summary judgment in favor of both respondents on the issue of punitive damages.

On June 14, the trial court orally granted summary judgment in favor of the Steichens on the issue of wrongful repossession and awarded compensatory damages of $500.

In October 1984, the trial court denied the Steichens' motion for a new trial or amended findings. The court also denied Saxon's motion for attorney's fees and costs.

### ISSUES

1. Did the trial court err in granting summary judgment in favor of appellants on the issue of wrongful repossession?

2. Did the trial court err in granting summary judgment in favor of Saxon?

3. Did the trial court err in granting summary judgment against appellants on the issue of punitive damages?

4. Did the trial court err by ruling damages were not recoverable under Minn.Stat. § 336.9–507 (1982)?

### ANALYSIS

*Summary Judgment Standard*

Our court has discussed summary judgment and the standard of review on appeal.

A motion for summary judgment may be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact and that either party is entitled to judgment as a matter of law. The district court must view the evidence in the light most favorable to the nonmoving party, and this court on appeal must view the evidence most favorably to the one against whom the motion was granted.

*New Concept Confinement Technology Feeders, Inc. v. Kuecker,* 364 N.W.2d 450, 452 (Minn.Ct.App.1985) (quoting *Grondahl v. Bulluck,* 318 N.W.2d 240, 242 (Minn. 1982)).

1. Wrongful repossession claim against the bank:

■ The trial court ruled repossession was wrongful as a matter of law because the notice given by the bank prior to repossession was deficient. This ruling is correct. *Cobb v. Midwest Recovery Bureau Co.,* 295 N.W.2d 232 (Minn.1980) is controlling.

In *Cobb,* the Minnesota Supreme Court adopted a strict notice rule that a secured creditor must comply with before attempting self-help repossession. The *Cobb* holding imposes a strict duty on the secured creditor who accepts late payments from a debtor. The secured creditor must notify the debtor that strict compliance with the contract terms is required. 295 N.W.2d at 237. Furthermore, this notice must be given before a creditor can legally exercise the statutory right of self-help repossession pursuant to Minn.Stat. § 336.9–503 (1982). *Id.*

The *Cobb* rationale is that acceptance of late payments creates a duty to notify because the creditor's conduct "induced the justified reliance of the debtor in believing that late payments were acceptable." *Cobb,* 295 N.W.2d at 236. Under facts quite similar to the Steichens' situation, the court in *Cobb* held that when the creditor did not notify the debtor that strict compliance was required, the repossession was wrongful as a matter of law. *Id.* at 237.

Considering the unequal bargaining positions of sellers (dealerships and financial institutions) and consumers, the strict notice rule of *Cobb* must be carefully observed.

Here, even viewed in the light most favorable to the bank, there was insufficient evidence to show a real dispute on any material fact regarding the wrongful repossession claim. The bank conceded in its brief that it accepted late payments in August and September 1981 and gave no further notice to appellants before repossessing the truck in October. Therefore, this matter was properly disposed of by summary judgment.

2. Wrongful repossession claim against the Ford dealership:

The trial court granted summary judgment in favor of Saxon and dismissed all claims against the dealership. The court erred in so doing.

The Steichens claim Saxon is liable for the wrongful repossession under several theories, including: (1) joint and several liability for tortious acts of the bank; (2) liability under the principles of agency law; (3) liability as a joint venturer; and (4) liability under the "close connection" doctrine. We believe the theories advanced by appellants, especially the agency theory, are viable and should not have been summarily dismissed. Here, the Steichens had no chance to do so.

The Steichens allege a wide variety of facts connecting the dealership to the bank. The Steichens offered to prove facts regarding Saxon's involvement in the repossession and its refusal to return the truck. Inter alia, they alleged that Saxon prepared appellants' credit application and that the dealership arranged the credit investigation; that Saxon prepared the retail installment sales contract and advanced credit on the truck to appellants. They further alleged that Saxon had an agreement with First Bank to share in the finance charge.

The Steichens also offered to prove respondents had a repurchase agreement whereby Saxon agreed to repurchase vehicles after repossession. Under that agreement, Saxon required the bank to repossess the vehicle before the delinquency became 90 days old. Saxon received periodic reports from First Bank on all delinquent accounts.

The Steichens also alleged that Saxon had an opportunity to control the repossessions by First Bank; that Saxon did not voluntarily return the truck after it was notified that it was wrongfully repossessed; and that Saxon repurchased the truck after it was repossessed by First Bank. Finally, they alleged that Saxon agreed to indemnify First Bank from any claim made against the bank for wrongful repossession.

■ The Steichens' allegations establish a factual dispute as to Saxon's actual connection with the repossession. This dispute renders summary judgment on this question inappropriate. On remand, the theories by which Saxon may be connected to the wrongful repossession should be tried.

3. Punitive damages claims against both First Bank and Saxon:

The trial court erred in dismissing the punitive damages claims against both First Bank and Saxon.

■ Punitive damages are appropriately recovered from a defendant whose acts demonstrate "a willful indifference to the rights or safety of others." Minn.Stat. § 549.20, subd. 1 (1982). *Cobb* held that wrongful repossession was just such an act. *Cobb* at 237, 238.

■ This court has held that in a wrongful repossession case, punitive damages are to be submitted to a jury for determination. *Sieren v. American Family Financial Services*, 356 N.W.2d 408, 411 (Minn.Ct. App.1984). Here the trial court substituted its judgment for that of the jury. The court erred in ruling that the actions of the bank's collection agent did not rise, as a matter of law, to the level of willful indifference to appellants' rights. There existed enough disputed facts to make this issue one for jury determination.

■ Furthermore, we note that the trial court denied the Steichens' claim based on its analysis of the bank employee's actions in repossessing the truck. The court

never considered the conduct of the employer. A secured lender must supervise its employees and provide proper policy and instruction on lawful self-help repossession, and not allow its collectors to act with a free hand in attempting to collect from its customers. It was for the jury to determine whether the evidence supported the allegations that the employer failed to have any standards to guide its collection agent and that its acts constituted willful disregard of the rights of the Steichens.

If it is determined that Saxon was an active participant in the repossession, then punitive damages would be recoverable against Saxon under *Cobb*. If, however, it is determined that Saxon was not involved in the repossession, there still remains the question of its wrongful retention after notice.

*Wrongful Retention*

■ Wrongful retention, if established, could also justify an award of punitive damages. The record is clear that Saxon and the bank had notice that the truck was wrongfully repossessed; yet Saxon and the bank refused to return the truck. The Steichens were forced to seek an order from the bankruptcy court for the return of their truck. The question of whether Saxon's or the bank's actions constituted a willful and wanton disregard for the Steichens' rights should also have been submitted to the jury.

On remand, the trial court should instruct the jury to address the issue of whether respondents' conduct after repossession and their failure to return the truck after proper notice constituted a conversion by the bank or Saxon. *See Henderson v. Maryland National Bank*, 278 Md. 514, 366 A.2d 1 (Md.App.1976).

In particular, the jury should determine: (a) whether Saxon's wrongful detention of the truck after notification of the wrongful repossession and of the bankruptcy proceedings was conversion; and (b) whether First Bank's failure to have proper repossession guidelines and its failure to return the truck after proper notification was conversion.

■ Since self-help repossession is a harsh remedy, strict application of the law is necessary to prevent abuse and to discourage illegal conduct which would often go undetected due to the consumer's lack of knowledge. Punitive damages, where permitted by law, should be used as a deterrent against future unlawful conduct and as a warning that unlawful self-help repossession will not be condoned.

■ 4. The debtor who defaults may recover damages if the secured party violates the UCC provisions regarding repossession. *See* Minn.Stat. § 336.9–503–.9–507 (1982).

The damages section provides in part: (1) If it is established that the secured party is not proceeding in accordance with the provisions of this part disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred the debtor or any person entitled to notification ... has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this part. If the collateral is consumer goods, the debtor has a right to recover in any event an amount not less than the credit service charge plus ten percent of the principal amount of the debt or the time price differential plus ten percent of the cash price.

Minn.Stat. § 336.9–507 (1982).

■ According to the parties' contract, appellants were in default when they stopped making payments. The trial court erred in finding that there technically was no default. On remand, the trial court should address the application of section 336.9–507 (1982).

**DECISION**

We affirm summary judgment as to the wrongful repossession claim. We reverse summary judgment as to Ron Saxon Ford, Inc.'s involvement in the repossession, the punitive damages claim against both re-

spondents, and the application of Minn. Stat. § 336.9–507. We remand for trial.

Affirmed in part, reversed in part, and remanded.