**Martin BLOOMQUIST, a.k.a. Martin Blomquist, d.b.a. Marty's Auto Service, Appellant,**

v.

**FIRST NATIONAL BANK OF ELK RIVER, Respondent.**

**No. CX–85–865.**

Court of Appeals of Minnesota.

Dec. 3, 1985.
Review Denied Jan. 31, 1986.

John C. Hoffman, Princeton, for appellant.

Clifford C. Lundberg, Elk River, Sally Ferguson, Minnetonka, for respondent.

Heard, considered and decided by FORSBERG, P.J., and PARKER and FOLEY, JJ.

## OPINION

FOLEY, Judge.

Debtor, Martin Blomquist, appeals from a summary judgment and a deficiency judgment for creditor, First National Bank of Elk River. Debtor sued the bank asserting, inter alia, that the bank committed a breach of the peace when it repossessed collateral from the debtor's locked business without his consent. Debtor was unsuccessful in obtaining an injunction to enjoin the bank's sale of the collateral and the sale occurred before an appeal could be heard. The bank moved for summary judgment on the debtor's claims and sought a deficiency judgment on the notes arguing it had a right to "self-help" repossession. The trial court granted the bank summary judgment on the debtor's claims and entered a deficiency judgment against the debtor. We reverse the summary judgment, vacate the deficiency judgment and remand for trial on the issue of damages for the conversion.

## FACTS

Appellant, Martin Blomquist (debtor) owned and operated an automobile repair service in Elk River, Minnesota. In the course of his business, debtor borrowed money from respondent First National Bank of Elk River (bank). Two notes are at issue here: (1) a promissory note dated July 14, 1983 in the amount of $11,540.20, which renewed a November 27, 1981 note for which all of debtor's business tools and equipment were given as security under a November 27, 1981 agreement, and (2) a promissory note in the amount of $3,505 dated November 23, 1982 for which a jeep with a snowplow was given as security.

On June 15, 1984 the bank sent debtor a letter demanding all note obligations be brought current by the end of June or "we will have to start action." The letter noted delinquencies of $1,405.00 on the equipment note and $1,790.68 on the jeep note.

Debtor paid the bank $470 on June 20, 1984. Mr. Wheaton, the bank's vice president, stated that in the next few weeks he visited debtor at his place of business, "informing him that unless the accounts were brought to date, repossession must take place." Debtor responded, "That will put me out of business." Wheaton replied, "I realize that." On one occasion Wheaton inventoried some of the equipment.

Debtor's version of the events is that Wheaton repeatedly threatened, "I will have to send in the boys and close you down." Debtor stated that he told Wheaton he would not give the bank his tools and that he was working on raising the money.

On about August 10, 1984, debtor offered the bank $600.00 but it was refused as inadequate. On August 20, 1984 the bank sent debtor a letter, noting the defaults, accelerating payment, demanding full payment, and concluding: "If payment is not made within the next three days the Bank will take possession of the secured goods * * *."

On Saturday August 25, 1984, when debtor's business was closed, the bank's agents repossessed debtor's business tools and equipment. One of the bank's agents removed a cracked window pane, that was taped shut, to enter debtor's closed business. He then climbed through the window and opened the overhead garage door which had been secured with a deadbolt lock. The bank's agents, including the bank's vice president, the bank's attorney, an off-duty highway patrol officer and his son, then removed debtor's tools and equipment.

During the repossession, some of debtor's business tenants complained to bank agents that they could not just break and enter into debtor's business and remove his goods. Affidavits of these tenants indicate they protested the actions and were upset by what they observed. One tenant called the police after observing what she thought was a crime.

Debtor did not learn of the repossession until he arrived at his business on Monday morning and observed a repossession notice on a vehicle he was repairing. He denied consenting to the repossession and protested the bank's right to repossess. Within a few days, he commenced this suit claiming, inter alia, unlawful repossession and conversion, and seeking general, special and punitive damages.

During November 1984, debtor redeemed his jeep with snowplow. On January 5, 1985 the bank auctioned off the repossessed business tools and equipment for a total of $4,850. Debtor had sought to enjoin the sale, but the injunction was denied. An appeal to this court followed, but the sale occurred before the appeal could be heard.

Following the sale, debtor sought to amend his complaint disputing the method of sale and asserting other claims for damages. The bank moved for summary judgment on the issue of unlawful repossession and on its counterclaim for the balance due on the notes plus attorney's fees. The court granted the bank summary judgment—dismissing debtor's claims, and entered a deficiency judgment of $10,866.11, plus interest and attorney's fees against debtor. The court also granted the bank possession of debtor's "remaining shop equipment." Debtor appeals from the adverse judgments.

## ISSUES

1. Did the bank commit a breach of the peace in repossessing collateral when its agents, without debtor's consent, entered debtor's locked business by removing a window pane?

2. Did the bank's sale of the repossessed goods constitute conversion as a matter of law?

## ANALYSIS

*Standard of review:*

The function of a court reviewing summary judgment is to determine whether there are any genuine issues of material fact for trial, and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979).

*Trial court decision:*

The trial court ruled as a matter of law that debtor's cause of action failed to state a claim for which relief might be granted based on its findings:

That because of Plaintiff's breach of the notes and security agreements with Defendant, Defendant had an absolute right to take possession of the tools and equipment which it repossessed on August 25, 1984.

That the First National Bank of Elk River did repossess the tools and equipment made the subject matter of this action in

good faith in order to enforce its rights under the notes and security agreements given to it by Plaintiff Martin Blomquist. That the repossession was by self help without Breach of Peace.

*Statute at issue:*

Minn.Stat. § 336.9–503 states:

Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done *without breach of the peace* or may proceed by action * * *.

*Wrongful repossession?*

Debtor claims that creditor wrongfully repossessed his tools and equipment. Debtor claims that because he specifically told the bank he would not willingly give up his tools and equipment and since he never consented to the bank's entry into his business in any way, including in the security agreement, the bank had no authority to repossess and should have sought judicial relief. Moreover, the bank committed a breach of the peace when it repossessed by breaking and entering into debtor's locked and closed business.

Creditor argues and the trial court agreed, that self-help repossession was appropriate because the debtor was in default. Therefore, debtor's breach of the notes gave creditor "an absolute right to take possession" of debtor's tools and equipment. Creditor notes that Minn.Stat. § 336.9–503 (1984) authorizes self-help repossession if there is no breach of peace and the security agreement signed by debtor granted creditor the right to inspect the collateral. Creditor admits the agreement did not specifically authorize entry into debtor's business to repossess collateral.

We agree with debtor. Self-help repossession is not lawful where it requires or constitutes a breach of the peace. *See* Minn.Stat. § 336.9–503. Minnesota has not specifically delineated a test to determine whether a breach of the peace has occurred. However, we are guided by Minn.

Stat. § 645.22 (1984) in construing this phrase.

Laws uniform with those of other states shall be interpreted and construed to effect their general purpose to make uniform the laws of those states which enact them.

*Id.*

State courts in Florida and Pennsylvania enunciate the following test or guidelines as helpful in determining whether a "breach of the peace" has occurred during a repossession of collateral:

(1) Whether there was entry by creditor upon debtor's premises, and

(2) whether the debtor or one acting in his behalf consented to the entry and repossession.

*Quest v. Barnett Bank of Pensacola,* 397 So.2d 1020, 1023 (Fla.App.1981) (quoting White & Summers, *Uniform Commercial Code* 966 (1962)); *see Walker v. Walthall,* 121 Ariz. 121, 122, 588 P.2d 863, 864 (1978). In *Quest,* the Florida court explained that the debtor's express consent for creditor to enter an enclosed area must be freely and voluntarily given, and that implied consent only covers those activities that are within a fair and reasonable interpretation of the terms of the grant. The Arizona court, in *Walker,* noted that generally the facts of each case must be evaluated to determine if a breach of the peace has occurred.

■ Here, debtor repeatedly told the bank's vice president that he would not consent to a repossession. When a debtor has not consented to repossession and in fact, has specifically revoked any implied right to such repossession, a creditor is not entitled to the self-help remedy but must pursue a judicial remedy. *Quest,* 397 So.2d at 1023; *see Walker,* 121 Ariz. at 122, 588 P.2d at 864. Self-help repossession denies to the objecting debtor an opportunity to assert a defense to the repossession such as whether the parties' course of conduct has varied the agreements. *See Cobb v. Midwest Recovery Bureau Co.,* 295 N.W.2d 232 (Minn.1980).

The case of *Laurel Coal Co. v. Walter E. Heller & Co., Inc.*, 539 F.Supp. 1006 (W.D.Penn.1982) is nearly analogous to the instant case. In *Laurel*, the debtor's note was secured by a bulldozer. Upon the debtor's alleged default and failure to tender full payment as demanded, creditor repossessed the bulldozer by cutting a chain that secured a fence surrounding the debtor's business premises. The debtor sued, alleging that the self-help repossession was unlawful because it constituted a breach of the peace. The Pennsylvania court held "that the actual breaking of a lock or fastener securing property, even commercial property, constitutes a 'breach of the peace' * * *." *Id.* at 1007. The court also noted that, "even non-forceful repossessions may be found unlawful." *Id.* at 1008.

In the *Laurel* opinion, the Pennsylvania court cited with approval the earlier case of *Stewart v. North*, 65 Pa.Super. 195 (1916), which is factually similar to the instant case. In *Stewart*, the court held that breaking a window to unlock a door to a residence in order to repossess a piano was a breach of the peace constituting an unlawful repossession. *See Laurel* at 1007.

The case of *Kimble v. Universal TV Rental, Inc.*, 65 Ohio Misc. 17, 417 N.E.2d 597 (1980) also supports our decision here. In *Kimble*, the Ohio court found that even though creditor and debtor had entered into an agreement providing for peaceable entry to recover goods, breaking into debtor's locked apartment and taking a rental TV set, without express or implied consent to do so, amounted to criminal acts and constituted a "breach of the peace" within the meaning of the Uniform Commercial Code. The Ohio court defined breach of the peace as a "violation of the public order, a disturbance of public tranquility, by an act or conduct inciting to violence or tending to provoke or excite others to breach the peace *[including] any violation of any law enacted to preserve peace and good order.*" *Id.* at 22, 417 N.E.2d at 602 (quoting 2 Anderson, *Wharton's Criminal Law and Procedure*, § 802 (1957)) (emphasis added).

Other cases supporting our holding include *Thompson v. Ford Motor Credit Co.*, 324 F.Supp. 108 (D.S.C.1971) (no element of violence is needed in order for repossession of collateral to constitute a breach of the peace); *Quest v. Barnett Bank of Pensacola*, 397 So.2d 1020 (Fla.App.1981) (a breach of peace can occur if creditor damages debtor's property during the repossession); *Dixon v. Ford Motor Credit Co.*, 29 Ill.Dec. 230, 72 Ill.App.3d 983, 391 N.E.2d 493 (1979) (a creditor's repossession in disregard of debtor's unequivocal oral protest may be found to be a breach of the peace); *General Electric Credit Corp. v. Timbrook*, 291 S.E.2d 383 (W.Va.1982) (an unauthorized entry into a debtor's dwelling to repossess collateral constituted a breach of the peace within the meaning of the UCC).

We note that the bank asks us to consider a number of cases where a breach of the peace is not found. *See C.F. Adams Co. v. Sanders*, 66 S.W. 815 (Ky.1902); *Wirth v. Heavey*, 508 S.W.2d 263 (Mo.App.1974); *Global Casting Industries, Inc. v. Daley-Hodkin Corp.*, 105 Misc.2d 517, 432 N.Y.S.2d 453 (1980); *Cherno v. Bank of Babylon*, 54 Misc.2d 277, 282 N.Y.S.2d 114 (Sup. Ct.Nassau Co.1967) *aff'd* 29 A.D.2d 767, 288 N.Y.S.2d 862 (2d Dept.1968); *North v. Williams*, 120 Pa. 109, 13 A. 723 (1888); *Harris Truck & Trailer Sales v. Foote*, 58 Tenn.App. 710, 436 S.W.2d 460 (1968); *Robertson v. Union Planters National Bank of Memphis, Tennessee*, 561 S.W.2d 901 (Tex.Civ.App.1981). These cases do not control the instant case. All of these cases base their holding on the fact that the creditor entered the debtor's premises to repossess collateral, or repossessed a motor vehicle, with debtor's express or implied consent.

■ The bank asserts that many of these same cases hold that there is no breach of the peace when the repossession occurs without violence or threat of violence. *See e.g. Harris Truck; Global Casting* (a breach of the peace is "a disturbance of public order by an act of violence, or by an act likely to produce violence * *."

*Id.* 432 N.Y.S.2d at 455). The requirement of violence apparently represents a minority view. *See, e.g.,* 6 Uniform Laws Annotated § 9–503, n. 15 (West 1981). This does not seem consistent with the commercial practices encouraged by the Minnesota Supreme Court and this court. *See, e.g., Cobb,* 295 N.W.2d at 237–38; *Steichen v. First Bank Grand,* 372 N.W.2d 768 (Minn. Ct.App.1985). We believe the better view, expressed in the cases we have relied on, holds that no violence or threat of violence need occur before a breach of the peace may be found. *See Quest; Laurel; Thompson.* The Minnesota Supreme Court has already adopted the view in *Berg v. Wiley,* 264 N.W.2d 145, 150 (Minn.1978), that a non-violent, forcible entry to retake possession of a tenant's premises constitutes a breach of the peace.

Here it is uncontested that the bank's agents and their attorney entered debtor's closed and locked business without his consent. We are appalled at the course of conduct in this matter by the bank's officers and the bank attorney. Their position is indefensible, and their actions in breaking and entering appellant's business premises were totally inappropriate since judicial process was readily available to enforce any claimed rights. The bank's breaking and entering debtor's business to repossess collateral constitutes a breach of the peace within the meaning of Minn.Stat. § 336.9–503, as a matter of law. *See Berg* (self-help repossession of premises was non-peaceable and wrongful as a matter of law where landlord retook possession in tenant's absence by picking the locks and locking her out).

### Conversion

Our holding here requires a finding that the bank's sale of the unlawfully repossessed tools and equipment constitutes a conversion. *See Kloos v. Gatz,* 97 Minn. 167, 169–70, 105 N.W. 639, 640–41 (1906); *see also Molm v. Barton,* 27 Minn. 530, 8 N.W. 765 (1881).

To constitute conversion, there must be an execution of dominion over the goods which is inconsistent with and in repudiation of the owner's right to the goods or some act done which destroys or changes their character or deprives the owner of possession permanently or for an indefinite length of time.

*Hildegarde, Inc. v. Wright,* 244 Minn. 410, 413, 70 N.W.2d 257, 259 (1955).

We remand for trial on the issue of debtor's damages. The measure of damages for conversion is the fair market value of the repossessed goods at the time of the conversion, plus interest from that date. *McLeod-Nash Motors, Inc. v. Commercial Credit Trust,* 187 Minn. 452, 460, 246 N.W. 17, 20 (1932). Debtor also pled special damages and punitive damages. Debtor may be entitled to special damages including lost profits if he is able to prove the loss with reasonable certainty. *See Cushing v. Seymour, Sabin & Co.,* 30 Minn. 301, 304–05, 15 N.W. 249, 250 (1883). Punitive damages are appropriately recovered in a wrongful repossession case. *Cobb* at 237–38; *Steichen v. First Bank Grand,* 372 N.W.2d 768, 772 (Minn.Ct.App. 1985). *pet. for rev. denied,* (Minn. October 18, 1985). "Punitive damages, where permitted by law, should be used as a deterrent against future unlawful conduct and as a warning that unlawful self-help repossession will not be condoned." *Steichen* at 773. These damage claims should be assessed by a jury at trial.

### DECISION

The bank's repossession of collateral from debtor was unlawful because the bank committed a breach of the peace when its agents entered debtor's business without permission by removing a window pane to unlock the garage door. The subsequent sale of debtor's tools and equipment was therefore unauthorized and constitutes conversion as a matter of law.

We reverse the summary judgment, vacate the deficiency judgment, and remand for trial on the issue of damages for conversion, including a determination whether the bank is entitled to offset for the notes from compensatory damages and whether

debtor is entitled to punitive and other damages.

Reversed and remanded for trial with deficiency judgment vacated.